**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| E.D., a minor, b/n/f MICHAEL DUELL as parent and next friend of E.D., LISA DUELL as parent and next friend of E.D., and NOBLESVILLE STUDENTS FOR LIFE, | ) ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | CAUSE NO.: _____ |
| NOBLESVILLE SCHOOL DISTRICT, NOBLESVILLE HIGH SCHOOL, SUPERINTENDENT BETH NIEDERMEYER, CRAIG MCCAFFREY, JANAE MOBLEY, DANIEL SWAFFORD, JEREMY LUNA, ALEXANDRA SNIDER PASKO, ALISON ROOTES, ALLISON SCHWINGENDORF-HALEY, BYRON SIMPSON, ELIZABETH KIZER, EMILY PATTERSON-JACKSON, GRACE TUESCA, and STEPHANIE EADS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE**
**RELIEF AND JURY DEMAND**

COMES NOW E.D., a minor, by and through her parents and next friends, Michael and

Lisa Duell, and Noblesville Students for life (collectively "Plaintiffs") by counsel, for their

Complaint against Noblesville School District, Noblesville High School, Superintendent Beth

Niedermeyer, Craig McCaffrey, Janae Mobley, Daniel Swafford, Jeremy Luna, Alexandra

Snider Pasko, Alison Rootes, Allison Schwingdendorf-Haley, Byron Simpson, Elizabeth Kizer,

Emily Patterson-Jackson, Grace Tuesca, and Stephanie Eads (collectively, "Defendants").

## INTRODUCTION

1.    This claim arises out of the actions of Defendants regarding Plaintiff's attempts to

create and maintain a pro-life student club at Noblesville High School ("NHS").

2.    NHS is part of the Noblesville School District ("NSD").

3.    Public high schools are supposed to be a place where young students are exposed

to different opinions and beliefs, learn how the Constitution protects both their own rights, and

those of their classmates with whom they disagree with. This idea is dependent on free and

vigorous debate and expression between students that is often carried out through spoken and

written expression. These high school students are the future leaders of our country.

4.    NHS is teaching its students that the First Amendment does not apply to some

government actors, granting them unbridled discretion to discriminate against student speech

because of their viewpoint. Therefore, depriving students of the opportunity to be exposed to

different and opposing viewpoints.

5.    To seek to participate in Freedom of Speech at NHS, Plaintiff sought to create

Noblesville Students for Life ("NSFL").

6.    NSFL is a student organization comprising of students who seek to save lives

from induced abortion by compassionately educating their peers on abortion and creating a

culture of life, in order that abortion may end in their lifetimes.

7.    NSFL is a not affiliated with any religious organization or political party.

8.    NSFL participates in speech about abortion, which is a political and policy issue.

9.      Plaintiff initially received approval from school administration to organize and create NSFL. This approval was later revoked.

10.     At the start of the 2021-2022 school year, NHS had an unwritten verbal policy for registration of student organizations and clubs ("Policy"). The first step requires students to meet with the NHS principal, then to get further approval from various other members of the NHS administration, including approval of a call-out meeting date and a flyer for such call-out meeting. Once a student organization has been approved, grants student organization access to certain speech forums including the ability to have meetings, post flyers, and attend a student activity fair.

11.     Due to the lack of a clear written policy, NHS affords unbridled discretion to school officials responsible for deciding which groups to approve. This failure allows Defendants to deny student organizational status to any group simple because Defendant's object to the group's political views.

12.     Defendants have used this vague Policy to bar Plaintiff E.D. from creating a pro-life student group, NSFL.

13.     NHS's decision has denied students at NHS exposure to the life-affirming mission of NSFL.

14.     NSFL is a chapter of Students for Life of America ("SFLA"), a nonprofit corporation with its Principal office in Fredericksburg, Virginia.

15.     SFLA is a pro-life, life affirming organization that seeks to recruit, train, and mobilize the pro-life generation to abolish abortion.

16.     NSFL welcomes all students to participate in its membership, activities, and events.

Verified Complaint for Damages and Injunctive Relief                                    3

17.     This is a civil action seeking injunctive and declaratory relief, to vindicate and safeguard Plaintiff's fundamental rights as secured by the First and Fourteenth Amendments to the United States Constitution.

18.     Defendant's policies and actions deprived and will continue to deprive Plaintiff of fundamental rights under the United States Constitution.

19.     Each and every action Defendant alleged herein was committed by Defendants under the color of federal or state law.

## JURISDICTION

20.     This action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, and 1988. This Court has original jurisdiction over the federal claims by operation of 28 U.S.C. §§ 1331, and 1343.

21.     This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201-2202, the requested injunctive relief under 28 U.S.C. § 1343(a)(3)-(4), the requested damages under 28 U.S.C. § 1343(a)(4), and attorney's fees under 42 U.S.C. § 1988(b).

22.     Venue is proper in the United States District Court for the Southern District of Indiana under U.S.C. § 1391 because the events giving rise to the claims occurred in this District, and because at least one Defendant resides in this District.

23.     This Court has supplemental jurisdiction over all other claims that are related to the original action under 28 U.S.C. §1367.

## PARTIES - PLAINTIFF

24.     Plaintiff E.D. is a minor student at NHS and the founder and president of NSFL.

25.     Plaintiff E.D. resides in Noblesville, Indiana.

26.     Plaintiff E.D. seeks to establish NSFL at NHS, reclaim NSFL's status as an approved student organization at NHS, and avail herself of the meeting space, speech forums, and other benefits and privileges that are available to approved student organizations at NHS.

27.     Plaintiff E.D. wishes to discuss political, religious, social, cultural, and moral issues, events, and ideas.

28.     Plaintiff E.D. brings this suit on E.D.'s behalf as an individual, by and through her parents and next friends, Michael and Lisa Duell.

29.     Lisa Duell is E.D.'s mother.

30.     Michael Duell is E.D.'s father.

31.     Plaintiff NSFL is a student-led expressive organization comprised of NHS students. It brings this action on behalf of itself and its individual members.

32.     Plaintiff NSFL seeks to reclaim its status as an approved student organization at NHS.

33.     Plaintiff NSFL seeks to avail itself of the meeting space, speech forums, and other benefits and privileges that are available to other approved student organizations at NHS.

34.     Plaintiff NSFL was approved, but such status was later revoked by Defendants under policies created and enforced by Defendants.

35.     Plaintiff NSFL is entitled to protection of its Right to Expressive Association.

36.     E.D. and NSFL are entitled to viewpoint neutral access to all forums available to approved student organizations at NHS. As well as protection of constitutional rights including the right to Freedom of Speech, and Association.

37.     If E.D. and NSFL succeed in this lawsuit, they will be able to obtain viewpoint neutral access to all the benefits and privileges available to other approved student organizations such as meeting space, ability to flyer at NHS, and access to channels of communication.

## PARTIES - DEFENDANTS

38.     Defendant NSD is a public school system under the laws of the State of Indiana.

39.     Defendant NSD comprises of multiple schools and buildings such as Hazel Dell Elementary, Hinkle Creek Elementary, Noble Crossing Elementary, North Elementary, Promise Road Elementary, Stony Creek Elementary, White River Elementary, Noblesville East Middle School, Noblesville West Middle School, Noblesville High School, Noblesville Community Center, HBM Special Services Cooperative, Noblesville Schools Educational Services Center, and a Transportation Department.

40.     Defendant NHS is a public high school under the laws of the State of Indiana.

41.     Defendant NSD is the school district containing NHS, located in Hamilton County, Indiana.

42.     Defendant Beth Niedermeyer ("Niedermeyer") is, and was at all times relevant to this Complaint, the Superintendent of NSD.

43.     Niedermeyer is responsible for carrying out the policies and procedures for all of NSD.

44.     Niedermeyer sanctions and supports the actions of all Defendants, including the revocation of NSFL, as a student organization at NHS

45.     Niedermeyer has the authority to review, approve, or reject subordinates' actions.

46. Niedermeyer has enforced the revocation of NSFL in an unconstitutional manner because she has permitted NHS officials including other Defendants, to exercise unbridled discretion in enforcing the revocation of NSFL.

47. Defendant Niedermeyer is sued in her official and individual capacities.

48. Defendant Craig McCaffrey ("McCaffrey") is, and was at all times relevant to this Complaint, the Principal of NHS. He resides in Noblesville, Indiana.

49. McCaffrey is responsible for carrying out the policies and procedures, including approving student organizations at NHS.

50. McCaffrey sanctions and supports the actions of all Defendants, including the revocation of NSFL as a student organization at NHS.

51. McCaffrey has the authority to review, approve, or reject his subordinates' decisions, including the decision to deny Plaintiff's flyer.

52. McCaffrey has enforced the revocation of NSFL in an unconstitutional manner because he has permitted NHS officials, including other Defendants, to exercise unbridled discretion in enforcing the revocation of NSFL.

53. Defendant McCaffrey is sued in his official and individual capacities.

54. Defendant, Janae Mobley ("Mobley") is, and was at all times relevant to this Complaint, an Assistant Principal at NHS. She resides in Noblesville, Indiana.

55. Mobley is responsible for carrying out the policies and procedures at NHS.

56. Mobley is sued in her official and individual capacities.

57. Defendant Daniel Swafford ("Swafford") is, and was at all times relevant to this Complaint, an Assistant Principal at NHS. He resides in Noblesville, Indiana.

58. Defendant Swafford is sued in his official and individual capacities.

59.     Defendant Jeremy Luna ("Luna") is, and was at all times relevant to this Complaint, the Dean of Students at Noblesville High School. He resides in Noblesville, Indiana.

60.     Luna is sued in his official and individual capacities.

61.     McCaffrey, Mobley, Swafford, and Luna knew or should have known that the revocation of NSFL was discrimination based on viewpoint. Although Defendants knew or should have known this, they have failed to reinstate NSFL as an approved club or take any other corrective action.

62.     Defendant Alexandra Snider Pasko ("Pasko") is, and was at all times relevant to this Complaint, an Instructional Assistant at Noblesville East Middle School. She resides in Noblesville, Indiana.

63.     Pasko is sued in her official and individual capacities.

64.     Defendant Alison Rootes ("Rootes") is, and was at all times relevant to this Complaint, a Technical Assistant at NSD. She resides in Indianapolis, Indiana.

65.     Rootes Facebook account identifies her as a "Technical Assistant" at Noblesville Schools in the Educational Services Center.

66.     Rootes is sued in her official and individual capacities.

67.     Defendant Allison Schwingendorf-Haley ("Schwingendorf-Haley") is, and was at all times relevant to this Complaint, an English Teacher at NHS. She resides in Noblesville, Indiana.

68.     Schwingendorf-Haley is sued in her official and individual capacities.

69.     Defendant Byron Simpson ("Simpson") is a Former Special Education Teacher at NHS. He resides in Noblesville, Indiana.

70.     Simpson's Facebook account identifies him as a former "Sped teacher" at NHS.

71.    Defendant Simpson is sued in his official and individual capacities.

72.    Defendant Elizabeth Kizer ("Kizer") is, and was at all times relevant to this Complaint, a Transitional Coordinator of Special Education at NHS. She resides in Westfield, Indiana.

73.    Kizer is sued in her official and individual capacities.

74.    Defendant Emily Patterson-Jackson ("Patterson-Jackson") is, and was at all times relevant to this Complaint, an Instructional Assistant for Life Skills at Noblesville West Middle School. She resides in Noblesville, Indiana.

75.    Patterson-Jackson is sued in her official and individual capacities.

76.    Defendant Grace Tuesca ("Tuesca") is, and was at all times relevant to this Complaint, an Explorer Guide at Noblesville Schools. She resides in Noblesville, Indiana.

77.    Tuesca's Facebook account identifies her as a "Miller Explorer Guide" at Noblesville Schools.

78.    Tuesca is sued in her official and individual capacities.

79.    Defendant Stephanie Eads ("Eads") is, and was at all times relevant to this Complaint, a teacher at Stony Creek Elementary School with NSD. She resides in Avon, Indiana.

80.    Eads' Facebook account identifies her as a public-school teacher.

81.    Eads is sued in her official and individual capacities.

## FACTS

### I.    Group Formation

82.    NSD is a public school district that receives funding from the State of Indiana as well as the United States government.

83.    NHS is part of NSD.

84.     E.D. is a freshman at NHS.

85.     E.D. started a student organization NSFL at NHS during the 2021 fall semester.

86.     On August 3, 2021, E.D. met with NHS Principal McCaffrey, as required by NHS policy for all new groups being formed at the school. E.D. was informed that her club would likely be approved once Principal McCaffrey spoke with NSFL's faculty advisor.

87.     Principal McCaffrey approved E.D.'s club.

88.     After the meeting with McCaffrey, E.D. submitted a "club form." This form included information such as the name of the organization, the sponsor teacher, club's mission, and the types of activities the club would participate in. A true and accurate record of this club form is attached hereto as Exhibit A.

89.     E.D. stated that the goal of the club is to "work to develop student leaders and empower students to knowledgeably and courageously speak about abortion. My club will also strive to bring awareness to the abortion issue, and positively impact my peers' respect and value for life and the unborn." Exhibit A.

90.     E.D. stated that the club would be doing some on and off-campus activities such as flyering, tabling, chalking, volunteering at local pregnancy resource centers, participating on national pro-life days, and conducting drives for various needs of local pregnancy resource centers. *See Exhibit A.*

91.     E.D. planned for the club to meet biweekly.

92.     On August 16, E.D. learned of a club fair at NHS that was set to occur on August 19, 2021.

93.     This club fair allows students to sign up for student clubs and provides an opportunity for students to learn about some of the clubs that were at the school.

94.    On August 16 E.D. emailed Mason Harris ("Harris"), a Social Studies teacher at NHS who was in charge of organizing the club fair, for confirmation on whether she would be permitted to participate in the fair. A true and accurate copy of the above-referenced email is attached hereto as Exhibit B.

95.    Harris confirmed that E.D. was on the list and therefore permitted to participate in the fair. *See Exhibit B.*

96.    At the NHS student organization fair, E.D. recruited a list of thirty-four (34) students with interest in NSFL.

97.    A true and accurate copy of the NSFL sign-up sheet from the student club fair is attached as Exhibit C.

**II.    Proposed Flyer**

98.    Student clubs are permitted to advertise their clubs at call-out meeting by posting flyers in the school. These flyers often have photos, as well as club meeting times, or a QR code for additional information on the club.

99.    Flyers require approval from an NHS administrator.

100.    On August 31, 2021, E.D. mailed Mobley, an Assistant Principal at NHS, to get approved a flyer informing NHS students of the NSFL call-out meeting.

101.    E.D. created a poster ("Proposed Flyer") to inform NHS students of the NSFL call-out meeting. A true and accurate copy of the Proposed Flyer is attached hereto as Exhibit D.

102.    The Proposed Flyer included a photo of young students in front of the United States Supreme Court Building in Washington D.C. holding signs that said "We are the pro-life generation" and "Defund Planned Parenthood." There was additional room at the bottom on the Proposed Flyer for E.D. to fill in information about the meeting time such as the time, place, and

location. This information was left blank as E.D. was pending approval on a meeting time and location from the NHS administration. *See Exhibit D*.

103.    On September 1, 2021, Mobley responded to E.D. stating that the flyers should only contain the name of the group and the meeting date, time, and location. Mobley also stated that there was no need for photos. The example she gave was that the Young Republican's club does not display items for the Republican Party. A true and accurate copy of the email chain is attached hereto as Exhibit E.

104.    NSFL was also awaiting confirmation from Luna to be able to hold their first meeting,

105.    NSFL selected a call-out date of September 6, 2021.

106.    NSFL's flyer and call-out date were never approved by the NHS administration.

107.    E.D. emailed Luna several times to get confirmation. After not hearing from Luna, E.D. asked for her sponsor teacher to email Luna.

108.    Having received no response or confirmation for the call-out meeting, on September 3, 2021, E.D. met with Dean Luna to discuss the Proposed Flyer and call-out date for NSFL.

109.    Luna told E.D. that the Proposed Flyer would not be approved because it included a picture.

110.    When E.D. pointed out that many other student clubs post flyers containing pictures, Dean Luna said that there was an issue with the particular photo on the Proposed Flyer.

111.    E.D. offer to replace the image with a different one, or to photoshop out any content that violated the rules.

112.    E.D. asked Luna for the rules on student club posters, but no such rules were provided.

113.    NHS did not have rules or policies regarding pictures or images on student flyers or posters.

114.    The NHS administration failed to confirm with E.D. a date when she could hold the NSFL call-out meeting.

115.    The NHS administration failed to approve Proposed Flyer for a call-out meeting, and further failed to cite any rule or policy that the poster violated.

### III.    Revocation

116.    NSFL was approved as a valid student group at NHS during the fall of 2021.

117.    McCaffrey revoked NSFL's status as a student organization on or about September 3, 2021 ("Revocation").

118.    McCaffrey sent an email, dated September 3, 2021, to E.D.'s mother informing her of the Revocation. A true and accurate copy of the afore-mentioned Revocation email is attached hereto as Exhibit F.

119.    On September 3, 2021, at 11:57 am, McCaffrey sent an email to E.D.'s mother informing her that NSFL's status as a student club as NHS was revoked.

120.    NHS revoked NSFL's student club status within three hours of the above-referenced meeting between Luna and E.D., wherein the student requested confirmation for her club's call-out date and flyer.

121.    At no point did McCaffrey, Luna, or any other NHS administrator contact E.D. herself to inform her of her club's revocation.

122.    McCaffrey's email to E.D.'s mother states that the flyers were not approved because they were political or controversial.

123.    McCaffrey's email to E.D.'s mother stated: "At this point, I am not confident that this club is a student-driven club and therefore am removing the club's approval to meet in school." Exhibit F.

124.    Luna and McCaffrey are neighbors.

125.    Luna and McCaffrey spend social time together and have discussed the Revocation.

126.    E.D. followed the rules that were given to her to set up NSFL.

127.    E.D. was the only one that was behind setting up NSFL

128.    E.D.'s parents were not responsible for, or controlling NSFL.

129.    SFLA was not behind the setting up of NSFL

130.    SFLA provided tools to E.D. for E.D. to establish NSFL at NHS, such as documents to create a proper organization constitution, and additional training materials on how to set up a student group at a high school.

131.    Niedermeyer was made aware of the Revocation and took no action to correct it.

**IV.    NSFL Leadership**

132.    E.D.'s mother was present at the meeting with E.D. and Dean Luna on September 3, 2021.

133.    At no point in the meeting on September 3, 2021, did Dean Luna or any other NHS administrator raise a concern that a parent was in the room.

134.    E.D.'s mother did not participate in the meeting. She was simply in the room with E.D. and Luna.

135.    E.D.'s mother attended the meeting with Luna because the family has a policy that E.D. cannot meet alone with a male adult.

136.    In McCaffrey's own words, E.D. "did all of the talking and did a good job of representing what she wanted to do." Exhibit F.

137.    E.D. developed NSFL and is the leader of NSFL.

138.    E.D. alone planned and organized activities for NSFL, emailed various administrators to get the club started, secured a faculty advisor, and took action on scheduling meetings with administrators.

139.    NSFL is led by E.D, who is not acting at the direction of anyone else.

140.    E.D. worked over the summer to be able to pay for supplies that NSFL might need. E.D. won't even let her parents pay for copies to be made at copy stores.

**V.    Other Student Clubs**

141.    NHS permitted a mural depicting fists in the air to be displayed. A true and accurate photo of this mural is attached as Exhibit G.

142.    Many student clubs at NHS had posted flyers with pictures during the Fall 2021 semester, including Key Club, Leo Club, Mock Trail, the Color Guard, and Fellowship of Christian Athletes. True and accurate photos of flyers for these clubs are attached as Exhibits H, I, J, K. and L.

143.    Additional student clubs at NHS, including Fellowship of Christian Athletes, Key Club, and Leo Club, were permitted to display logos of a national organization.

**VI.    Social Media**

144.    Facebook is a public forum and meeting space that can be seen by a wide variety of people.

145.    Groups on Facebook allow people in local communities to come together and talk about local issues and topics.

146.    Liking, loving, or commenting on public posts on Facebook can be seen by anyone with a Facebook account.

147.    Liking, loving, and commenting on private or restricted posts on Facebook can be seen by Facebook friends or subscribers.

148.    Comments about E.D. were made and posted on two different Facebook groups, the Noblesville Schools Community page, and Noblesville Uncensored.

149.    The Noblesville Schools Community has 6.3 thousand members.

150.    The Noblesville Uncensored page has 11 thousand members.

151.    On or about November 24, 2021, Patricia McKimmy Mahoney posted on the Noblesville Schools Community Facebook Page a copy of an email the E.D. had sent to her City Councilman ("Post A"). The Post A was made without the consent of E.D.'s parents.

152.    Patterson-Jackson replied to the Post A stating, "So out of curiosity would you be good with club posters in the school for the Black Student Union that said 'Defund the Police?'"

153.    Simpson commented on the Post A, "Can join Young Republicans or church youth group. Move on."

154.    Rootes "liked" the Post A

155.    Kizer "liked" the Post A.

156.    Milie May posted on Facebook "Is this theoretically happening in a school where the Students for Life group is fully allowed to function as they wish?" ("Post B")

157.    Patterson-Jackson commented on the Post B, "Not that I am aware of. My question was posted theoretically relating to the appropriateness of the Students for Life flier that

was denied by the school. In that flier, there is a picture of girls holding signs that say 'Defund Planned Parenthood.' Since the OP apparently thinks this flier is appropriate for school, I was curious if she would also be okay with a flier that had a picture of kids holding 'Defund the Police' signs? For what it's worth, I don't think either of those signs would be appropriate for school."

158.    Tuesca liked Post B post.

159.    Patterson-Jackson commented on Post A, stating: "I got all I needed to know about the true intent and purpose of this 'club' by the use of the two phrases: 'puppet, Greta Thunberg' and 'Pastor Micah.' No thanks." ("Post C")

160.    Eads responded to Post C by saying "EXACTLY."

161.    Patterson-Jackson commented on Post A, stating: "You have deliberately and intentionally left out key parts of the original email, specifically her references to 'puppet, Greta Thunberg,' and 'Pastor Micah's' endorsement. You have absolutely lost all credibility at this point. And as I said on that original post, there is no place for a club that endorses misogyny, bigotry, and conspiracy-driven politics in our public schools." ("Post D").

162.    Eads "loved" Post D.

163.    Tuesca "liked" Post D.

164.    Michael Burks posted to Post A, "Parent in on the formation meeting? Already has legal representation? I suppose I'm a skeptic, but its almost like it was planned." ("Post E").

165.    Snider Pasko "liked" Post E.

166.    Jazzy O'Brien posted Post A, "the school was concerned that a bunch of adults were behind this group and it seems like this post is proving that point." ("Post F").

167.    Schwingendorf-Haley "liked" Post F.

168.    Schwingendorf-Haley is E.D.'s English teacher at NHS.

169.    Josh Drizen posted to Post A, "Ah, another post about the right wingers involving their children in their culture war bullsh*t. Forced-birthers are revolting and this was a setup to drive conservative anger." ("Post G") (asterisk ours).

170.    Tuesca "liked" Post G.

**VII.    The Noblesville Times, and other Publicity**

171.    On December 3, 2021 E.D.'s pastor Micah Beckwith posted a column in the Times of Noblesville criticizing NHS for its discriminatory practices against NSFL, the pro-life club at NHS. ("Column"). The Column was posted without knowledge or consent from E.D., or E.D.'s parents.

172.    On December 3, 2021, McCaffrey posted a rebuttal to the Column ("Rebuttal"). This column asserts that the NSFL club was not initiated by E.D.

173.    McCaffrey sent the Rebuttal to every NHS student and parent from his NHS email account.

174.    The Rebuttal also asserts that E.D. disregarded school policy.

175.    The Rebuttal insinuates that E.D. is a troublemaker and has a disregard for rules and authority.

176.    The Rebuttal defames E.D.'s character.

177.    The Rebuttal discusses a student at NHS who started a pro-life club.

**VIII.    Intimidation by Luna and Mobley**

178.    On September 14, 2021, Luna pulled E.D. out of class and demanded a meeting right away.

179.    E.D. requested that Luna set up a meeting for later, but Luna refused and insisted the meeting occur right then.

180.    When E.D. first asked what the meeting would be about, Luna refused to clearly inform E.D. of the reason for the meeting.

181.    E.D. requested that another adult be present at the meeting between E.D. and Luna. Luna initially refused.

182.    Luna spoke firmly, raised his voice, and intimidated E.D.

183.    Luna stood in close proximity to E.D., even though he was told that the student was uncomfortable and the interaction was inappropriate.

184.    E.D. was concerned that Luna was not going to permit another adult or person to be present in the meeting.

185.    While waiting for another person to come into the meeting, Luna taunted E.D. by saying "text away, text away" to E.D as she texted her mother.

186.    After E.D. again affirmed that another person needed to be present for the meeting, Mobley was pulled into the meeting.

187.    Luna and Mobley told E.D. that this meeting was because E.D. attended a meeting of the Peonies club (a feminist group at NHS) and took a photo of the PowerPoint presentation.

188.    Luna pulled out a piece of paper and stated that it was a law prohibiting taking photos in school.

189.    E.D. was not given time to read over this paper, but was able to note that the paper referenced taking pictures of students in a sexual manner.

190.    Luna and Mobley told E.D. that pictures were not permitted to be taken during at the school.

191.    There is no NHS policy that states anything about not taking photos.

192.    Students are permitted to take photos at school during other times of day. For example, students often take photos of presentations in math class for their personal notes.

193.    Luna and Mobley insisted on seeing E.D.'s phone during the meeting to look at photos that E.D. had on it.

194.    Students are not required to show teachers their phones.

195.    On September 14, 2021, E.D. was a fifteen (15) year old girl.

196.    E.D.'s family has a rule that she is not allowed to be alone with an adult, especially an adult male, without a third person present.

197.    E.D. was uncomfortable and distraught alone in the presence of a man in authority, such as Luna.

198.    Luna knew that his conduct would make E.D. uncomfortable.

199.    Luna disregarded E.D.'s and discomfort because he wanted to intimidate her.

200.    Luna knew that he has authority and is intimidating to students and used that to his advantage against E.D.

201.    The interaction in the hall and subsequent meeting with Luna on September 14, 2021 made E.D. distraught.

202.    After the meeting on September 14, 2021, E.D. was visibly shaking, and was nearly in tears because of the intimidation and harassment from Luna and Mobley.

203.    Luna is known to students as an intimidating figure.

204.    Luna is known to students as being aggressive.

205.    Luna used his knowledge, position of authority, and physical statute to intimidate E.D.

## VIOLATIONS OF THE FIRST AMENDMENT

206.    The First Amendment of the United State Constitution, incorporated and made applicable to Defendant's through the Fourteenth Amendment, guarantees Plaintiff E.D. the right to association and the right to freedom of speech.

### I.    Count I – Violations of the Right of Association

207.    All prior paragraphs containing factual allegations are incorporated herein by reference.

208.    For Count I, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, and Luna in his official and individual capacities.

209.    Under federal law, a high school's denial of registration of a student organization without justification burdens and abridges the right of association.

210.    A school's denial of a student group's access to meeting space and other benefits and privileges of registration, including channels of communication such are putting out flyers around the school, or being able to recruit students to be involved burdens and abridges the right to association.

211.    The revocation of a registered student organization status to a student organization is a form of prior restraint, placing a heavy burden on the school to justify its denial of registration.

212.    Once a student group obtains registered status with a school, the burden is upon the school to justify the revocation of such status.

213.    The content or viewpoint of a student group's expression is an invalid basis for revoking or denying a student group registration.

214.    NHS revoked registration of E.D.'s student organization without justification.

215.    NHS revoked registration of E.D.'s student organization because of the organization's view on life in the womb.

216.    NHS's stated reason for the Revocation was that McCaffrey was "not confident that this club is a student-driven club." *Exhibit F.*

217.    However, E.D. was the leader of NSFL.

218.    In fact, the NSFL's status as a student organization at NHS was revoked because of the group's viewpoint on life in the womb.

219.    Defendant's Revocation hindered E.D.'s ability to communicate with other students at NHS regarding the NSFL group.

220.    The Revocation damaged E.D.'s ability to maintain student interest in at NHS.

221.    When NHS would not permit the group to meet, NSFL lost the members that had been recruited at the student fair.

222.    NHS Policy does not have or provide for a right to appeal a decision to deny a student organization status to a student group.

223.    Because of a lack of clear policy at NHS, this affords administrators with unbridled discretion to grant, deny, or revoke approved student organization status.

224.    The Policy makes key benefits and privileges only available to approved student groups. Such as the right to meet, post flyers around the school, and ability participate in

recruitment fair once a semester. When a group is not approved, they are not able to take part in these privileges and benefits that approved groups are permitted to take part in.

225.    E.D. had planned an event for NSFL wherein Mary Carmen, an employee of SFLA, would train the members of NSFL. *See Affidavit of Mary Carmen*, attached as Exhibit M.

226.    Due to Defendants' actions and the Revocation, Plaintiffs were unable to bring in a speaker for a NSFL event.

227.    Defendants violated the First Amendment right to freedom of association.

**II.    Count II – Violations of the Right to Freedom of Speech**

228.    All prior paragraphs containing factual allegations are incorporated herein by reference.

229.    For Count II, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, and Luna in his official and individual capacities.

230.    The Free Speech clause of the First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amends I.

231.    The Free Speech clause of the First Amendment is incorporated and made applicable to the states by the Fourteenth Amendment. This clause prohibits viewpoint discrimination in a public forum created for student speech.

232.    When a public-school registers student organizations and creates benefits, privileges, and access to speech forums available to only those registered student organizations, they create a public forum for student speech and expression.

233.     The government's ability to restrict speech in a public forum is limited. A public school may not apply content-based or viewpoint-based standards in registering student organizations.

234.     The NHS Student Interest Club Form creates a public forum for student speech.

235.     NHS revoked NSFL's status as a student organization due to the group's stance on life in the womb.

236.     Therefore, the Revocation was due to viewpoint discrimination, in violation of the Free Speech clause of the First Amendment of the United States Constitution.

237.     Political speech is at the core of what the First Amendment is designed to protect.

238.     Students do not shed their constitutional rights to Freedom of Speech or Expression at the schoolhouse gate.

239.     "Schools may not regulate such student speech unless it would materially and substantially disrupt classwork and discipline in the school." *Tinker v. Des Moises Independent Community School District*, 393 U.S. 503 (1969).

240.     NHS and its administrators violated E.D.'s right to Free Speech by revoking her right to form a pro-life student organization at NHS.

241.     Abortion is a political issue, and thus pro-life speech is political speech.

242.     Plaintiff E.D. has been denied her right to political speech on campus.

243.     Mobley told E.D. that her student organization call-out poster could not contain any pictures, specifically photos that represent the organization.

244.     However, many student organizations at NHS have hung posters with pictures. Such groups include the Spell Bowl, NHS Drama Club, Fellowship of Christian Athletes, Color Guard, Mock Trial, Key Club, Best Buddies, and Leo Club.

245.    Key Club, Leo Club, and Fellowship of Christian Athletes flyers all contain a photo of a logo for the national organization in which they represent.

246.    Fellowship of Christian Athlete's logo contains a Christian cross.

247.    E.D. had asked for clarification several times on what could be included on the flyers, including an email to Swafford and an assistant principal on August 16, 2021, and an email to Mobley on August 19, 2021. In reply, no clarification was provided for what the policy was for what could be included in student group flyers.

248.    When E.D. asked for approval of the Proposed Flyer, Mobley informed her that there was a problem with this particular picture on the proposed poster, and that the content was not appropriate for school due to the content.

249.    In fact, NHS administrators refused to approve the proposed poster because the image showed a sign stating, "Defund Planned Parenthood."

250.    On September 3, 2021 E.D.  went into the school to speak with Luna. E.D.'s mother accompanied E.D.

251.    E.D.'s mother attended this meeting with E.D. because of a family policy that does not permit E.D. from meeting with any males without another person present.

252.    E.D. had been trying to get ahold of Luna to get clarification on what could be on the Proposed Flyer, as well as approval on a meeting date for NSFL. The meeting date was needed to be able to add to the Proposed Flyer.

253.    During the meeting Luna pointed to the sign that said "Defund Planned Parenthood" and said that the problem was with this sign.

254.    Luna stated during the meeting that the school was "already walking on eggshells."

255.    McCaffrey's email to E.D.'s mother on September 3, 2021, which explained the revocation for NSFL, stated that E.D.'s proposed poster for NSFL, "cannot contain any content that is political or that could disrupt the school environment. Club advertising posters only state the name of the club and the details of the meeting time and location."

256.    Other student organizations at NHS are permitted to contain political content. For example, a Black Student Union Group at NHS is permitted to hang posters containing the "raised fist" logo that is associated with the Black Lives Matter organization and Marxism, both of which promote political ideologies.

257.    Students at NHS are only permitted to promote political speech when it is aligned with the NHS administration's political agenda.

258.    In fact, NHS facilitates student speech that the administration agrees with.

259.    NHS fails to recognize the free speech rights of students whose views do not align with the NHS administration.

260.    NSFL's political agenda is not aligned with the administration's agenda.

261.    NHS and its administrators violated E.D.'s right to Free Speech by refusing permission to hang a call-out poster due to the content of the political speech therein.

262.    NHS and its administrators violated E.D.'s right to political speech.

263.    Defendant's revocation of NSFL as a registered student organization was unreasonable.

264.    E.D.'s First Amendment right to Freedom of Speech was harmed because of the actions of NHS school officials McCaffrey, Mobley, Swafford and Luna.

### III.    Count III – Violation of Plaintiff's Fourteenth Amendment Right to Due Process

265.    All prior paragraphs containing factual allegations are incorporated herein by reference.

266.    For Count III, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in his official and individual capacities, Swafford in his official and individual capacities, and Luna in his official and individual capacities.

267.    Under the Fourteenth Amendment to the United States Constitution, Plaintiff has a right to due process.

268.    Plaintiff's right to due process of law and prohibits Defendant's from promulgating and employing vague standards that allow for content and viewpoint discrimination in determining whether to approve, deny, or revoke a student organization. The Government may not regulate speech based on policies that permit, arbitrary, discriminatory, and overzealous enforcement.

269.    The government may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

270.    The government may not regulate speech based on policies that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

271.    There is no clear information on what the Policy at NHS for starting clubs requires.

272.    The Policy contains no information or criteria to guide decision makers in determining whether to grant, deny, or revoke student organizations their approved status.

273.    The Policy does not provide for any right of appeal of a student group whose approved status has been revoked or denied.

274.    The Policy does not require that meetings where decisions about the approved status of prospective or current student organizations are made be recorded or minutes taken and made publicly available.

275.    The Policy does not provide for the removal of any school official or other decision makers who have abused their authority or violated the Constitutional rights of a student or student group.

276.    The Defendant's decision to revoke Plaintiff's NSFL approved status denied Plaintiff rights and benefits under the United State Constitution without due process of law.

277.    Because of the Defendant's actions under the Policy, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm.

IV.    **Count IV – Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection of the Law**

278.    All prior paragraphs containing factual allegations are incorporated herein by reference.

279.    For Count IV, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, and Luna in his official and individual capacities.

280.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the equal protection of the law, which prohibits Defendants from treating Plaintiff differently than similarly situated student organizations.

281.    The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right, targets a suspect class, or as no rational basis.

282.    Plaintiff is similarly situated to other student organizations seeking approved status and other approved student organizations at NHS, including other student organizations that advocate for liberal political viewpoints.

283.    Defendant's Police violate various fundamental rights of Plaintiff, including Freedom of Association, Freedom of Speech, and due process of law.

284.    When government regulations, like Defendant's Policy, infringe on fundamental rights, discriminatory intent is presumed.

285.    Defendant's Policy has been applied to discriminate intentionally against Plaintiff's right to Freedom of Association, Freedom of Speech, and due process of law.

286.    Defendant's lack a rational compelling state interest for their disparate treatment of the Plaintiff.

287.    Defendant's Policy, and their application to Plaintiff are not narrowly tailored as applied to Plaintiff because Plaintiff's speech does not implicate any legitimate interest of Defendants.

288.    Defendants have applied the Policy to Plaintiff in a discriminatory and unequal manner, allowing other student organizations to received approved status. With this approval comes benefits, privileges, and speech forum access. While denying those same opportunities to Plaintiff, in violation of Plaintiff's right to equal protection of the laws under the Fourteenth Amendment.

289.    Because of the Defendant's actions pursuant to the Policy, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

## V.    Count V – Violations of Right to be Free from Retaliation

290.    All prior paragraphs containing factual allegations are incorporated herein by reference.

291.    For Count V, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, Luna in his official and individual capacities, Pasko in her official and individual capacities, Rootes in her official and individual capacities, Schwingdendorf-Haley in her official and individual capacities, Simpson in his official and individual capacities, Kizer in her official and individual capacities, Patterson-Jackson in her official and individual capacities, Tuesca in her official and individual capacities, and Eads in her official and individual capacities.

292.    The First Amendment's Free Speech Clause prohibits the government from taking any retaliatory actions against citizens because they exercised their constitutional rights, including their right to Free Speech.

293.    By revoking Plaintiff's student organization status because Plaintiff's exercised their First Amendment right by starting a pro-life club at NHS, Defendants by policy and practice have retaliated against Plaintiffs because of their free expression and deprived them of their ability to express their ideals freely.

294.    The group's approval status was removed due to an image on the proposed poster, which included a sign that read "Defund Planned Parenthood." This conduct is political expression, which the First Amendment clearly protects.

295.    Defendant's impeded Plaintiff's exercise of their First Amendment right by revoking NSFL's approved student organization status. This precludes NSFL from the ability to have meetings, post flyers about their meetings in the school, and use channels of communications only available to approved student organizations such as the student organization fair.

296.    Defendants have knowingly and intentionally punished Plaintiffs for engaging in protected expression by revoking NSFL's approved status.

297.    Defendant's actions to impeded Plaintiff's activities and to punish them for these activities are substantially motivated as a response to Plaintiff's exercise of its First Amendment rights.

298.    Defendants took the actions to impede Plaintiff's activities and are taking the actions to harass and punish Plaintiff for those activities as a function of the unbridled discretion that NHS's policies grant them.

299.    Defendants took actions to impede Plaintiff's activities, and are taking the actions to harass and punish Plaintiff for those activities due to the content and viewpoint of Plaintiff's expression

300.    Because Defendant's actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.

## COUNT VI – VIOLATIONS OF THE EQUAL ACCESS ACT

301.    All prior paragraphs containing factual allegations are incorporated herein by reference.

302.    For Count VI, Plaintiff alleges violations by NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, and Luna in his official and individual capacities.

303.    The Equal Access Act ("EAA") is a federal law that applies to "any public secondary school which receives Federal financial assistance" and permits noncurricular student groups to use school facilities. 20 U.S.C. § 407(a)-(b).

304.    In Indiana, "secondary school" means high school. IC § 20-18-2-18(a).

305.    NHS is a public school that receives federal government funds.

306.    NHS is subject to the requirements of the EAA.

307.    Under the EAA, a public secondary school with a 'limited open forum' is prohibited from discriminating against students who wish to conduct a meeting within that forum on the basis of 'religious, political, philosophical, or other content of the speech at such meetings.

308.    The EAA provides that a "limited public forum" exists when a school covered by the EAA, grants an offering to or opportunity for one of more noncurriculum related student groups to meet on school premises.

309.    A school's equal access obligations are triggered even if such a school allows only one noncurriculum related group to meet.

310.    A noncurriculum related student group is any student group that does not directly relate to the body of courses offered by the school.

311.    This determination depends on the individual school's curriculum, but courts must look at it is "actual practice" rather than their stated policy. For example, a scuba diving group is not directly related to the school curriculum, even if swimming is taught as a physical education class, when scuba diving is not taught in any regularly offered course at the school and does not result in academic credit. This similarly applies to groups like Key Club, even though it promotes civil responsibilities and community, it is not directly related to curriculum.

312.    Here, NHS's student organizations include a plethora of non-curriculum related student groups, including but not limited to: A Chance to Serve; Best Buddies; Black Student Union; Bring Change of Mind; Business Club; Chess and Board Game Club; Comedy Sports Club; Conservation Club; Campus Crusade for Christ; Distributive Education Clubs of America; Drama Club; Dungeons and Dragons; E-Sports; Family, Career, Community Leaders of America; Fashion Club; Fellowship of Christian Athletes; Fencing Club; Gender and Sexuality Alliance; Interact Club; International Thespian Society; Key Club; Kpop; Latino Student Union; Lend a Paw; Leo Club; Make a Wish; Mock Trial; Noblesville Diversity Coalition; Noblesville Young Democrats; Ping Pong Club; Police Explorers; Quill & Scroll; Quiz Bowl; Recycling; Riley Dance Marathon; Ski & Snowboard Club; Sociology Club; Speech and Debate Team; Students Taking Active Roles; Students Against Cancer; Unified Basketball; Unified Bowling; and Young Republicans.

313.    Since NHS is a public secondary school with at least one non-curriculum student groups, an equal access obligation is triggered.

314.    NHS' revocation of NSFL's student organization status violates the EAA.

315.    Clearly, NHS allows the formation of non-academic student groups. Its revocation of NSFL's status as a student organization violates the EAA.

**DEFENDANTS' ACTIONS CONSTITUTE LIBEL, SLANDER, AND BULLYING**

I.    **Count VII – Violations of School Policies against Bullying**

316.    All prior paragraphs containing factual allegations are incorporated herein by reference.

317.    For Count VII, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, Luna in his official and individual capacities, Pasko in her official and individual capacities, Rootes in her official and individual capacities, Schwingdendorf-Haley in her official and individual capacities, Simpson in his official and individual capacities, Kizer in her official and individual capacities, Patterson-Jackson in her official and individual capacities, Tuesca in her official and individual capacities, and Eads in her official and individual capacities.

318.    Teachers and employees of NSD have posted defamatory statement about E.D. publicly on their social media pages, in violation of NHS policies and state law.

319.    In NHS' Handbook, there is a specific anti-bullying provision that prohibits cyberbullying "through the use of data or computer software that is accessed through any computer, computer system, or computer network." This is a true and accurate copy of the NHS Handbook, Exhibit N.

320.    Bullying is defined in the NHS student handbook as "overt, unwanted, repeated acts or gestures, including verbal or written communications or images transmitted in any manner (including digitally or electronically), physical acts committed, aggression, or any other

behaviors, that are committed by a student or group or students against another student with the intent to harass, ridicule, humiliate, intimidate, or harm the targeted student and create for the targeted student an objectively hostile school environment that has the effect of substantially interfering with the targeted student's ability to participate in or benefit from the services, activities, and privileges provided by the school."  Exhibit N, pg. 21

321.    NHS's policies prohibit cyberbullying "though the use of data or computer software that is accessed through any computer, computer system, or computer network." Exhibit N, pg. 21.

322.    In NSD policies, "an employee's personal or private use of social media may have unintended consequences. While the Board respect's its employees First Amendment Rights, those right do not include permission to post inflammatory comments related to matters or private concern that could compromise the corporation's mission, undermine staff relationships, or cause a substantial disruption to the school environment. This warning includes staff members' online conduct that occurs off school property including from the employee's private computer. Postings to social media should be appropriate for the staff member's professional responsibilities." This is a true and accurate copy of NSD policy on social media and technology, Exhibit O.

323.    NSD has a general policy on anti-harassment, a true and accurate copy of this policy is attached at Exhibit P.

324.    NSD as a policy on staff ethics, which states that staff members in the performance of their professional duties will treat all others with respect, and refrain from making knowingly false or malicious statements about a student. A true and accurate copy of this policy is attached as Exhibit Q.

325.     The liking and commenting on posts on Facebook constitutes bullying under the NSD's policy. When people like, and comment on posts on Facebook they are showing their support for someone and agreeing with the statements that they posted.

326.     The affirmations of simply liking a post equates to bullying because when someone likes a post on Facebook, then can show up in their friend's feed. Because of this, it spreads that amount of people who might see the defamatory statement.

327.     Defendants' likes, loves, and comments were made on Facebook groups that have thousands of followers.

328.     Defendants made comments and liked or loved Facebook posts with intent to harass intimidate, and target E.D., a student at NHS. These actions are a clear violation of NHS policy.

329.     The actions of Pasko on social media violated NSD policies against bullying and harassment.

330.     The actions of Rootes on social media violated NSD policies against bullying and harassment.

331.     The actions of Schwingdendorf-Haley on social media violated NSD policies against bullying and harassment.

332.     The actions of Simpson on social media violated NSD policies against bullying and harassment.

333.     The actions of Kizer on social media violated NSD policies against bullying and harassment.

334.     The actions of Patterson-Jackson on social media, including calling E.D. a misogynist and bigot, violated NSD policies against bullying and harassment.

335.    The actions of Tuesca on social media violated NSD policies against bullying and harassment.

336.    The actions of Eads, including loving a demeaning post, on social media violated NSD policies against bullying and harassment.

337.    The actions of McCaffrey violated NSD, and NHS school policies against bullying and harassment.

338.    The actions of Mobley violated NSD, and NHS school policies against bullying and harassment.

339.    The actions of Swafford violated NSD, and NHS school policies against bullying and harassment.

340.    The actions of Luna violated NSD, and NHS school policies against bullying and harassment.

341.    NHS is vicariously liable for the actions of teachers and administrators who bully and harass NHS student.

342.    NSD is vicariously liable for actions of teachers and administrators who violate school policy.

343.    The actions and inactions of NHS and NSD constitute bullying and harassment under NHS policies.

**II.        Count IIX – Violations of State Laws against Libel, Slander, and Defamation**

344.    All prior paragraphs containing factual allegations are incorporated herein by reference.

345.    For Count IIX, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual

capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, Luna in his official and individual capacities, Pasko in her official and individual capacities, Rootes in her official and individual capacities, Schwingdendorf-Haley in her official and individual capacities, Simpson in his official and individual capacities, Kizer in her official and individual capacities, Patterson-Jackson in her official and individual capacities, Tuesca in her official and individual capacities, and Eads in her official and individual capacities.

346.    The elements of defamation in Indiana are (1) communication with defamatory imputation, (2) malice, (3) publication, and (4) damages.

347.    Defamation is activity that tends to injure reputation or diminish the esteem, respect, good will, or confidence in the plaintiff to excite derogatory feelings or opinions about the plaintiff.

348.    Libel is written or graphically transmitted defamatory information.

349.    Slander is spoken defamation.

350.    Patterson-Jackson called E.D. a misogynist and a bigot through a post on Facebook. These terms were said with the intent to injure E.D.'s reputation and with malice.

351.    When Ead's "loved" Patterson-Jackson's post, which showed support of the defamation and incorporated it as her own.

352.    McCaffrey's Rebuttal injured E.D.'s reputation as it characterized her as a troublemaker and rule breaker.

353.    The actions and inactions of Defendants constituted libel under Indiana law.

354.    The actions and inactions of Defendants constituted slander under Indiana law.

355.    The actions and inactions of Defendants constituted defamation under Indiana law.

III.        **Count IX – Conduct Constituting Intimidation and Bullying**

356.     All prior paragraphs containing factual allegations are incorporated herein by reference.

357.     For Count IX, Plaintiff alleges violations by Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, and Luna in his official and individual capacities.

358.     Luna has violated state law and school policy by attempting to intimidate E.D. in connection with the claims contained in this Complaint.

359.     Luna has harassed and intimidated E.D. by, among other things, requiring private meetings alone with her in his office.

360.     In Indiana, harassment occurs when a person with intent to harass, annoy, or alarm another person but with no intent of legitimate communication: makes a telephone call, whether or not a conversation ensues; communicates with a person by telephone, mail, or other form of written communication; transmits an obscene message, or indecent or profane words, on a Citizens Radio Service channel; or uses a computer network or other form of communication to communicate with a person or transmit an obscene message. IC 35-45-2-2.

361.     In Indiana, intimidation is when a person communicates a threat with the intent: that another engages in conduct against the person's will; that other person be placed in fear of retaliation for a prior lawful act; of: causing a dwelling, building, or other structure, or vehicle be evacuated; or that another person by placed in fear that the threat will be carried out. IC 35-45-2-1.

362.    Luna intimidated E.D. when he demanded to speak with E.D. and would not let her go to class, refusing to meet with her another time.

363.    Luna intimidated E.D. when he pulled her into his office on September 14, 2021. Once in his office, Luna disregarded E.D.'s request to have another adult present, and proceeded to raise his voice. This situation put E.D. in fear of retaliation by Luna.

364.    E.D. was not comfortable meeting with Luna alone.

365.    Luna was aware that E.D. was not comfortable, and used that to further intimidate E.D.

366.    Luna is known to students as an intimidating and aggressive figure.

367.    NSD has an anti-harassment policy. It states "that harassment of any member of the school community is inconsistent with the objective and will be prevented where possible and sanctioned as necessary to prevent its recurrence." Exhibit P.

368.    Luna's actions constitute harassment.

369.    Luna was acting contrary to NSD's staff ethics policy, and failed to recognized the basic dignities of E.D. Exhibit Q.

370.    Mobley was in the room when Luna harassed E.D. and failed to intervene. As such, Mobley is in turn liable for the harassment against E.D.

371.    This type of harassment should have been reprimanded by NHS.

372.    McCaffrey's failure as NHS principal to reprimand this type of behavior from school employees and administrators makes NHS liable for the harassment of E.D.

373.    Niedermeyer's failure as superintendent of NSD to reprimand this type of behavior from school employees and administrators make NSD liable for the harassment of E.D.

374. As such, Niedermeyer, McCaffrey, Luna, Mobley, and NHS have violated NHS policies against harassment.

375. Additionally, Luna and NHS have violated state and federal law against harassment.

## IV.    Count X – Intentional Infliction of Emotional Distress

376. All prior paragraphs containing factual allegations are incorporated herein by reference.

377. For Count X, Plaintiff alleges violation against Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, and Luna in his official and individual capacities.

378. Intentional infliction of emotional distress is committed by one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. Severe emotional distress is shown by a physical manifestation of the victim.

379. Luna intentionally inflicted emotional distress on E.D. when he pulled her out of the hallway on September 14, 2021 and intimidated her.

380. Luna acted with extreme and outrageous conduct when he disregarded E.D.'s requests to have another person present in their meeting.

381. Luna acted with extreme and outrageous conduct when he refused to meet with E.D. at another time.

382. Luna acted with extreme and outrageous conduct when he raised his voice at E.D.

383. Luna acted with extreme and outrageous conduct when he demanded to see E.D.'s phone.

384.    Luna knew that he could not view students' private cell phones.

385.    Luna knew that his power as a school administrator and as a male made E.D feel uncomfortable.

386.    Luna used his power as a school administrator to intentionally cause severe emotional distress to E.D.

387.    Luna knew that his power as a man in authority would intentionally intimidate E.D. and cause her severe emotional distress.

388.    After E.D. met with Luna, E.D. returned to band class, where she suffered from physical shaking and was nearly in tears. E.D. was unable to play her saxophone because of the distress caused by Defendants.

389.    Luna's actions constitution intentional infliction of emotional distress.

390.    Mobley was in the room when Luna inflicted emotional distress upon E.D. and failed to intervene. As such, Mobley is in turn liable for intentional infliction of emotional distress against E.D.

391.    McCaffrey's failure as NHS principal to reprimand this type of behavior from school employees and administrators makes NHS liable for the intentional infliction of emotional distress.

392.    Niedermeyer's failure to reprimand this type of behavior from school employees and administrators makes NSD liable for the intentional infliction of emotional distress.

## COUNT XI – VIOLATIONS OF FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT

393.    All prior paragraphs containing factual allegations are incorporated herein by reference.

394.    For Count XI, Plaintiff alleges violations against Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, and Eads in her official and individual capacities.

395.    The Family Educational Rights and Privacy Act ("FERPA") protects the privacy of student education records. 20 U.S.C. § 1232(g).

396.    FERPA prohibits any educational institution from making public any information about a student.

397.    Indiana Access to Public Records Act ("APRA") excepts from public disclosure public records which are required to be kept confidential by federal law. I.C. § 5-14-3-4(a)(3).

398.    FERPA is federal law which requires education records to be kept confidential. It clearly expresses the federal policy that student education records should not be widely disseminated to the public. Because of this, Indiana APRA laws require educational records to be kept confidential.

399.    APRA makes FERPA apply in Indiana.

400.    In the Rebuttal by McCaffrey he gives identifying information to E.D., such as that she is a NHS student and that she started a pro-life club that was denied.

401.    McCaffrey personally sent the Rebuttal to every NHS parent and student using his professional NHS email account.

402.    Eads shared a screenshot on Facebook that had E.D.'s name and that she went to NHS. This is a violation of FRPA.

403.    Niedermeyer's failure as a superintendent to intervene makes her jointly and severally liable for the actions of Defendants.

404.    NHS violated FERPA by disclosing information about E.D., a student at NHS, without consent from her or her parents.

## Count XII – Indiana Constitutional Violations

405.    All prior paragraphs containing factual allegations are incorporated herein by reference.

406.    For Count XII, Plaintiff alleges violations against Defendants NHS, NSD, Niedermeyer in her official and individual capacities, McCaffrey in his official and individual capacities, Mobley in her official and individual capacities, Swafford in his official and individual capacities, and Luna in his official and individual capacities.

407.    The Indiana Constitution Article 1 Section 9, states "no law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write or print."

408.    Indiana Freedom of Speech is broader than federal Freedom of Speech. Indiana Freedom of Speech protects speaking on any subject.

409.    If the state punishes expression under a statute or a school policy, and doing so imposes a material burden on a core constitutional value, this is a violation of Indiana Freedom of Speech.

410.    Political speech is a core constitutional value.

411.    The right, as impaired, would no longer serve the purpose for which it was designed.

412.    The Revocation constitutes state action restricting E.D.'s expressive activity.

413.    NSFL's mission is fighting abortion, which is a political issue.

414.    By denying E.D. her Freedom of Speech, the club she started is no longer allowed to serve the purpose for which it was designed.

415.    The Revocation denies E.D. the right to speak freely about political issues that are important to her. It is thus a denial of E.D.'s Freedom of Speech under Indiana law.

416.    Defendants' actions constitute an abuse of E.D.'s right to Free Speech under the Indiana Constitution.

417.    Defendants' actions furthermore constitute a prior restraint upon E.D.'s freedom of speech.

### DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

418.    Qualified immunity protects government officials from law suits alleging that the official violated a plaintiff's rights.

419.    However, school officials are not entitled to qualified immunity when they violate a student group's First Amendment rights.

420.    The question is "for purposes of qualified immunity, was the law was clearly established when the individual defendant's conduct violated those rights."

421.    Federal law is clearly established that schools should not violate student's First Amendment rights.

422.    As discussed above, NHS' denial of a student group violates clearly established state and federal law.

423.    First Amendment jurisprudence for students is well established. There have been several Supreme Court cases confirming what rights students have when they are at school. Additionally, the EAA is established law that is also meant to protect student's rights. Both of these are imperative for school administrators to adhere to. As they are the ones that are directly

impacting student's rights at schools. They are the ones that make the decision on what students can and cannot say at school, or what clubs can and cannot be established at the school.

424.    Even though the Supreme Court says that there does not necessarily have to be clear law on the subject, there is clear law on this subject.

425.    As stated above, the NHS administration violated E.D.'s right under the EAA because they permitted other noncircular student groups to participate on campus, but they are not permitting E.D.'s student group.

426.    The school administration also violated E.D.'s First Amendment right to Freedom of Speech because under *Tinker*, students have a right to political speech at school as long as it is not disruptive.

427.    NHS administration has further violated E.D. First Amendment right of Freedom of Association, Fourteenth Amendment right to due process, Fourteenth Amendment right to equal protection, and Indiana Constitution Freedom of Speech protections.

428.    In NSD policies, "an employee's personal or private use of social media may have unintended consequences. While the Board respect's its employees First Amendment Rights, those rights do not include permission to post inflammatory comments related to matters or private concern that could compromise the corporation's mission, undermine staff relationships, or cause a substantial disruption to the school environment. This warning includes staff members' online conduct that occurs off school property including from the employee's private computer. Postings to social media should be appropriate for the staff member's professional responsibilities." Exhibit P.

429.    Under NHS's policies, when the teachers posted to social media they were acting within the scope of their employment.

430.    Additionally, there was a clearly established rule in the NHS policies that said that there is to be no cyber bullying. The violation of this rule laid out in the policy handbook is another example of where qualified immunity would not be entitled to the defendants. Exhibit N.

431.    Therefore, under federal law, state law and under the NSD policies, Defendants Craig McCaffrey, Janae Mobley, Dan Swafford, and Jeremy Luna are not entitled to qualified immunity.

432.    Additionally, NHS employees Pasko, Alison Rootes, Schwingendorf-Haley, Simpson, Kizer, Patterson-Jackson, Tuesca, and Eads are not entitled to qualified immunity. Their actions on social media were in violation of state law, NHS School policies.

433.    Since Defendants violated clearly established law, Defendants are not entitled to Qualified Immunity through their employment with the NSD.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs E.D, Michael Duell, Lisa Duell, and NSFL respectfully request that this Court enter and order in their favor on the following:

As to Defendants NSD, NHS, and Superintendent Beth Niedermeyer, Principal Craig McCaffrey, Mobley, Swafford, and Luna in their official and individual capacities:

a)    Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated Plaintiffs' First Amendment Right to Freedom of Association.

b)    Plaintiffs are entitled to a declaration that Defendants violated Plaintiffs' First Amendment right to freedom of speech.

c)    Plaintiffs are entitled to a declaration that the Defendants violated Plaintiffs' Fourteenth Amendment right to due process.

d)    Plaintiffs are entitled to a declaration that the Defendants violated Plaintiffs'
Fourteenth Amendment right to equal protection of the law.

e)    Plaintiffs are entitled to a declaration that the Defendants violated the Federal
Equal Protection Act.

f)    Plaintiffs are entitled to a declaration that the Defendants violated Indiana
Constitutional Article 1, Section 9 Freedom of Speech protections.

g)    Plaintiffs are entitled to a declaration that NSFL is a valid student group at NHS.

h)    Plaintiffs are entitled to an injunction against NHS' revocation of the student
organization NSFL.

i)    Plaintiffs are entitled to a declaratory judgement that Defendant's Policy, facially
and as-applied, violates Plaintiffs' First and Fourteenth Amendment Rights.

j)    Plaintiffs are entitled to actual compensatory damages for the Defendant's
infringement on Plaintiffs' exercise of their First and Fourteenth Amendment rights.

k)    Plaintiffs are entitled to actual compensatory damages for the Defendant's
infringement on Plaintiffs' exercise of their Indiana Constitutional Rights.

l)    Plaintiffs are entitled reasonable attorney's fees, costs, and other costs and
disbursements in this action pursuant to 42 U.S.C. § 1983 and § 1988.

m)    Plaintiffs are entitled to all other further relief which the Court may deem just and
proper.

As to Defendants Beth Niedermeyer, Craig McCaffrey, Janae Mobley, Jeremy Luna:

n)    Pursuant to 42 U.S.C. §§ 1983, and 1988, Plaintiffs are entitled to a declaration
that the Defendants violated Plaintiffs' First Amendment Right to be Free from Retaliation.

o)      Plaintiffs are entitled to a declaration that Defendants engaged in intimidation under Indiana Law.

p)      Plaintiffs are entitled to a declaration that Defendants engaged in harassment under Indiana Law.

q)      Plaintiffs are entitled to a declaration that Defendants violated NSD policies.

r)      Plaintiffs are entitled to a declaration that Defendants engaged in intentional infliction of emotional distress under Indiana Law.

s)      Because of Defendants actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiff E.D. is entitled to an award of monetary damages and equitable relief.

t)      Plaintiffs are entitled to damages in an amount to be determined by the evidence and the Court, and the reasonable costs of the lawsuit, including attorney's fees.

As to Defendants NHS, NSD, Niedermeyer, McCaffrey, Pasko, Rootes, Schwingdendorf-Haley, Byron, Simpson, Kizer, Patterson-Jackson, Tuesca, and Eads:

u)      Pursuant to 42 U.S.C. §§ 1983, and 1988, Plaintiff is entitled to a declaration that the Defendant's violated Plaintiff First Amendment right to be free from retaliation.

v)      Plaintiff is entitled to a declaration that Defendants have engaged in harassment under Indiana Law.

w)      Plaintiff is entitled to a declaration that Defendants have engaged in bullying as per the Noblesville School District handbook.

x)      Plaintiff is entitled to a declaration that Defendants have engaged in defamation under Indiana Law.

Verified Complaint for Damages and Injunctive Relief                                        49

y)      Plaintiff is entitled to a declaration that Defendants have engaged in libel under Indiana Law.

z)      Plaintiff is entitled to a declaration that Defendants have engaged in Slander under Indiana Law.

aa)     Because of Defendants actions, Plaintiff as suffered, and continues to suffer, economic injury and irreparable harm. Plaintiff is entitled to an award of monetary damages and equitable relief.

bb)     Plaintiff is entitled to damages in an amount to be determined by the evidence and the Court, and the reasonable costs of the lawsuit, including attorneys' fees.

As to Defendants NSD, NHS, Niedermeyer, McCaffrey, and Eads:

cc)     Plaintiffs are entitled to a declaration that Defendants have violated the Federal Family Rights and Privacy Act ("FERPA").

dd)     Plaintiffs are entitled to a declaration that Defendants have violated Indiana's Access to Public Records Act ("APRA").

ee)     Because of Defendants actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm. Plaintiffs are is entitled to an award of monetary damages and equitable relief.

ff)     Plaintiffs are entitled to damages in an amount to be determined by the evidence and the Court, and the reasonable costs of the lawsuit, including attorneys' fees.

WHEREFORE, Plaintiffs E.D., a minor, by and through her parents, Michael Duell and Lisa Duell, and NSFL respectfully request that this Court enter an order in their favor, and against Defendants, on all counts, and for all other just and proper relief.

## JURY DEMAND

COME NOW Plaintiffs, by counsel, and demands trial by jury against Defendants on all issues set forth in this cause of action.

Respectfully submitted,

CHARITABLE ALLIES, INC.

Zachary S. Kester, #28630-49
L. Katie Buckner #35257-29
Natalie Collins, #36802-49
9100 Purdue Road, Suite 115
Indianapolis IN 46268
T: 317-333-6065 / F: 317-203-0892
zkester@charitableallies.org
kbuckner@charitableallies.org
ncollins@charitableallies.org

*Attorneys for Plaintiffs E.D. and her parents, Michael Duell and Lisa Duell*

**VERIFICATION**

I, Michael Duell, hereby verify and affirm under the penalties of perjury that the foregoing factual representations in the foregoing *Verified Complaint and Jury Demand* are true to the best of my knowledge, information and belief. I also verify and affirm that each and every exhibit is a true and accurate representation of the document it purports to be.

By: _____
Michael Duell

**VERIFICATION**

I, Lisa Duell, hereby verify and affirm under the penalties of perjury that the foregoing factual representations in the foregoing *Verified Complaint and Jury Demand* are true to the best of my knowledge, information and belief. I also verify and affirm that each and every exhibit is a true and accurate representation of the document it purports to be.

By: _____
Lisa Duell

**VERIFICATION**

I, E.D., a minor, hereby verify and affirm under the penalties of perjury that the foregoing factual representations in the foregoing *Verified Complaint and Jury Demand* are true to the best of my knowledge, information and belief. I also verify and affirm that each and every exhibit is a true and accurate representation of the document it purports to be.

By: 
E.D.

Verified Complaint for Damages and Injunctive Relief