UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

E. D., et al.,                                    )
                                                  )
                    Plaintiffs,                   )
                                                  )
            v.                                    )        No. 1:21-cv-03075-SEB-MPB
                                                  )
NOBLESVILLE SCHOOL DISTRICT, et al.,   )
                                                  )
                    Defendants.                   )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

This litigation arises out of events surrounding the authorization and revocation of

permission for the formation a pro-life club at Noblesville High School and the ensuing

public discussion of those events on social media and in the press.  Plaintiffs E.D., a

minor, by next friend Michael Duell; Lisa Duell, as parent and next friend of E.D.;

Michael Duell, as parent and next friend of E.D.; and Noblesville Students For Life have

jointly brought this action against Defendants Noblesville School District and Noblesville

High School (collectively, the "School"), and various school employees and

administrators in their official and individual capacities: Beth Niedermeyer, Craig

McCaffery, Janae Mobley, Daniel Swafford, Jeremy Luna, Alexandra Snider Pasko,

Alison Rootes, Allison Schwingendorf-Haley, Byron Simpson, Elizabeth Kizer, Emily

Patterson-Jackson, Grace Tuesca, and Stephanie Eads.  A total of nineteen separate

causes of action have been filed alleging violations of federal and state law.

Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Dkt. 60], filed on February 25, 2022, pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons detailed below, we <u>GRANT IN PART</u> and <u>DENY IN PART</u> Defendant's Motion to Dismiss.

### **Factual Background**

Plaintiff E.D. is a student who attends Noblesville High School ("NHS").  NHS is a part of the public, state-funded Noblesville School District in Noblesville, Indiana.  In August 2021, when E.D. was a freshman at NHS, she started a student organization, Noblesville Students for Life.  Plaintiffs allege that E.D. acting alone developed Noblesville Students for Life in accordance with all NHS rules applicable to student groups, without involvement of anyone else, and that she emailed the administrators as required to start the club, secured a faculty advisor, and took action to schedule meetings with administrators related to the club, all on her own.  *Id.* ¶¶ 148, 149.

**Formation of Noblesville Students for Life**

Noblesville Students for Life was originally approved as a student group by NHS Principal, Defendant Craig McCaffery, after E.D. met with him to discuss the club.  Am. Compl. ¶ 97.  The "club form" submitted by E.D. listed the name of the organization and identified the teacher sponsor, the club's mission, and the types of activities in which the club planned to engage, including flyering, tabling, chalking, participating on national pro-life days, and volunteering with and conducting drives for various needs of local community-based pregnancy resource centers.  *Id.* ¶ 98.  E.D. included on the form that the club's goal would be to "work to develop student leaders and empower students to

knowledgeably and courageously speak about abortion.  My club will also strive to bring awareness to the abortion issue, and positively impact my peers' respect and value for life and the unborn."  *Id.* ¶ 99.

On August 16, 2021, E.D. learned of a club fair at NHS that was scheduled for August 19, 2021, where students could learn about the student clubs offered at the school and sign-up to participate in the clubs in which they were interested.  The same day she learned of the fair, E.D. confirmed with the teacher in charge that she was permitted to participate on behalf of Noblesville Students for Life.  *Id.* ¶¶ 102–105.  E.D. thereafter attended the fair where thirty-four NHS students expressed interest in Noblesville Students for Life by signing E.D.'s sign-up sheet.  *Id.* ¶ 106.

**Defendants' Failure to Approve Club Flyer and Meeting Date**

NHS permits student clubs to advertise by posting flyers so long as the flyer is first approved by a school administrator.  On August 16, 2021, E.D. emailed Defendant Daniel Swafford, an Assistant Principal at NHS, to inquire regarding what could be included on student group flyers.  *Id.* ¶ 271.  On August 19, 2021, E.D. emailed Defendant Janae Mobley, another Assistant Principal at NHS, posing the same question.  E.D. was provided no clarification regarding any policy NHS had in place for student group flyers in response to her inquiries.  *Id.*  On August 31, 2021, E.D. submitted a flyer to Assistant Principal Mobley for approval that informed NHS students of the Noblesville Students for Life's call-out meeting.  *Id.* ¶ 110.  E.D.'s flyer included a photograph of young students in front of the United States Supreme Court in Washington D.C. holding signs reading, "we are the pro-life generation" and "defund Planned Parenthood."  *Id.* ¶

112.  There was space provided at the bottom of the flyer for E.D. to fill in information about the meeting, such as the time, place, and location, pending approval from the NHS administration.  *Id.*

Plaintiffs allege that NHS student club flyers often include photos as well as club meeting times and/or a QR code for additional information on the club.[1]  *Id.* ¶ 108.  On September 1, 2021, Assistant Principal Mobley informed E.D. that flyers should only contain the name of the group and the meeting, date, time, and location and that there was no need for photos.  *Id.* ¶ 113.  E.D.'s proposed flyer advertising Noblesville Students for Life was never approved by the NHS administration.  *Id.* 116.

At the same time E.D. was awaiting approval of her flyer, she was also awaiting confirmation from NHS's Dean of Students, Defendant Jeremy Luna, of the date she had selected for the call-out meeting, September 6, 2021.  *Id.* ¶¶ 114, 115.  E.D. emailed Dean Luna several times to confirm the proposed date but never received a response, even after she had asked her sponsor teacher to email as well.  *Id.* ¶ 117.  With the proposed date of the call-out meeting approaching and still having heard nothing from Dean Luna, E.D. met with him on September 3, 2021 to discuss her flyer and the call-out meeting.  E.D.'s mother also attended the meeting because E.D.'s family has a policy that E.D. cannot meet alone with a male adult, but beyond simply attending the meeting

_____

[1] Plaintiffs allege that NHS permitted other student clubs to post flyers with pictures and/or logos of national organizations during the fall of 2021, including Key Club, Leo Club, Mock Trial, the Color Guard, and Fellowship of Christian Athletes.  Am. Compl. ¶ 153.  Additionally, Plaintiffs allege that NHS's Black Student Union group was permitted to use images containing the "raised fist" logo "associated with the Black Lives Matter organization and Marxism, both of which promote political ideologies."  *Id.* ¶ 280.

E.D.'s mother did not participate and no NHS administrator raised any concern regarding her presence at the meeting. *Id.* ¶¶ 142, 144, 145.

At the September 3rd, meeting, Dean Luna told E.D. that her flyer would not be approved because it included a picture. When E.D. responded that other student clubs were allowed to post flyers containing pictures, Dean Luna said there was an issue with the particular photograph on E.D.'s flyer, pointed to the sign depicted in the photo that read: "Defund Planned Parenthood." *Id.* ¶¶ 119, 120, 227. Dean Luna remarked that the sign was the problem and stated that the School was "already walking on eggshells." *Id.* ¶¶ 277, 278. E.D. asked for a copy of the rules on student club flyers and offered to replace the photo with a different image or to photoshop out any content that violated the rules. *Id.* ¶¶ 121, 122. The NHS administration ultimately failed to approve the proposed flyer and never confirmed with E.D. a date when she could convene the Noblesville Students for Life call-out meeting. E.D. was also never provided a copy of any NHS rules or policies on student club posters nor informed of the specific rule or policy her flyer violated. *Id.* ¶¶ 124, 125.

Plaintiffs allege that because E.D. never received approval of a date for Noblesville Students for Life to hold its call-out meeting, the student group lost the members it had recruited at the student club fair.

**Defendants' Revocation of E.D.'s Student Group**

Within three hours of E.D.'s meeting with Dean Luna, Principal McCaffrey sent an email to E.D.'s mother stating that Noblesville Students for Life's status as a student club at NHS was being revoked. *Id.* ¶¶ 128–130. Principal McCaffrey informed E.D.'s

mother that because he was "not confident that [Noblesville Students for Life] is a student-driven club," he was "removing the club's approval to meet in the school." *Id.* ¶ 133. The email also stated that E.D.'s proposed flyer was not approved because such flyers "cannot contain any content that is political or that could disrupt the school environment. Club advertising posters only state the name of the club and the details of the meeting time and location." *Id.* ¶ 279. Principal McCaffrey's email to E.D.'s mother was the only notice E.D. received of the revocation as no NHS administrator contacted E.D. personally to inform her of the decision. *Id.* ¶ 131. NHS Superintendent Defendant Beth Niedermeyer was subsequently made aware of Principal McCaffrey's decision to revoke Noblesville Students for Life's student club status and took no action to reverse the decision. *Id.* ¶ 141.

Plaintiffs allege that E.D. had planned to have an outside employee of Students for Life of America attend a meeting to train the members of Noblesville Students for Life, but because of the revocation, E.D. was unable to organize this event. *Id.* ¶ 249, 250.

**The September 14, 2021 Meeting**

On September 14, 2021, Dean Luna pulled E.D. out of class and "demanded a meeting right away." *Id.* ¶ 190. Plaintiffs allege that Dean Luna stood in close proximity to E.D., even after he was told that she was uncomfortable, and that he "spoke firmly, raised his voice, and intimidated E.D." *Id.* ¶ 194, 195. E.D. asked the reason for the meeting, but Dean Luna did not provide a clear answer. When E.D. requested that the meeting be held at a later time, Dean Luna refused. Dean Luna also initially refused E.D.'s request to have another adult attend the meeting, but eventually relented. While

waiting for another adult to come into the meeting, Dean Luna "taunted E.D. by saying 'text away, text away' to E.D. as she texted her mother." *Id.* ¶ 197.  Assistant Principal Mobley ultimately joined the meeting.

Dean Luna and Assistant Principal Mobley told E.D. that they were meeting with her because she had attended a meeting of the Peonies club, which Plaintiffs allege is "a feminist group at NHS," and took a photo of the student group's PowerPoint presentation. *Id.* ¶ 199.  Dean Luna said there was a law prohibiting the taking of photos at school and handed E.D. a paper that she was unable to read at the time, but later noticed the referenced prohibition on taking photographs of students in a sexual manner.  *Id.* ¶¶ 200, 201.  Dean Luna and Assistant Principal Mobley told E.D. that she was not permitted to take photographs during the school day, even though there was no NHS policy against taking photos and students took photos at school in other contexts, including of presentations in math class for their personal notes.  *Id.* ¶¶ 203, 204.  Although NHS students are not required to show teachers their cell phones, Dean Luna and Assistant Principal Mobley insisted on seeing E.D.'s phone during the meeting to review the photos she had taken.  *Id.* ¶¶ 205, 206.  Plaintiffs allege that E.D. was "distraught," "visibly shaking," and "nearly in tears" following the meeting with Dean Luna and Assistant Principal Mobley and that she was so distressed that she was unable to play her saxophone when she returned to band class.  *Id.* ¶¶ 213, 214, 462.

**Social Media Activity**

Following NHS's revocation of Noblesville Students for Life's student group status, discussions arose on the Noblesville Schools Community and Noblesville

Uncensored Facebook pages[2] regarding these events.  Plaintiffs allege that multiple teachers and others associated with the School posted comments and/or "liked" others' posts on these Facebook pages that were personally "demeaning" to E.D. and Noblesville Students for Life.  *Id.* ¶¶ 159, 160.  Plaintiffs' specific allegations regarding this social media activity are as follows:

On November 24, 2021, an individual not involved in this litigation posted on the Noblesville Schools Community Facebook page a copy of an email E.D. had sent to her City Councilman regarding the revocation of Noblesville Students for Life's status as a student group at NHS.  This post was made without the consent of E.D.'s parents.  Defendants Alison Rootes, a Technical Assistant at NHS, and Elizabeth Kizer, a Transitional Coordinator of Special Education at NHS, "liked" the post.  *Id.* ¶¶ 166, 167.  Defendant Emily Patterson-Jackson, an Instructional Assistant for Life Skills at Noblesville West Middle School, commented in response, "So out of curiosity[,] would you be good with club posters in the school for the Black Student Union that said[,] 'Defund the Police?'"  *Id.* ¶ 164.  Another individual not involved in the litigation commented, "Can join Young Republicans or church youth group.  Move on."  *Id.* ¶ 165.

In response to the original Facebook post, another non-party commented: "Is this theoretically happening in a school where the Students for Life group is fully allowed to function as they wish?"  *Id.* ¶ 168.  Ms. Patterson-Jackson responded, "Not that I am aware of.  My question was posed theoretically relating to the appropriateness of the

---

[2] Plaintiffs allege that the Noblesville Schools Community page has 6,300 members, and the Noblesville Uncensored page has 11,000 members.  Am. Compl. ¶¶ 161, 162.

Students for Life flier that was denied by the school.  In that flier, there is a picture of girls holding signs that say 'Defund Planned Parenthood.'  Since the [original poster] apparently thinks this flier is appropriate for school, I was curious if she would also be okay with a flier that had a picture of kids holding 'Defund the Police' signs?  For what it's worth, I don't think either of those signs would be appropriate for school." *Id.* ¶ 169. Defendant Grace Tuesca, an Explorer Guide at Noblesville Schools, "liked" this post. *Id.* ¶ 170.

Ms. Patterson-Jackson commented again, stating, "I got all I needed to know about the true intent and purpose of this 'club' by the use of two phrases: 'puppet, Greta Thunberg,' and 'Pastor Micah.'  No thanks." *Id.* ¶ 171.  Defendant Stephanie Eads, an elementary school teacher in the Noblesville School District, responded to Ms. Patterson-Jackson's comment, saying, "EXACTLY." *Id.* ¶ 172.  Ms. Patterson-Jackson commented a third time in response to the original poster as follows: "You have deliberately and intentionally left out key parts of the original email, specifically her references to 'puppet, Greta Thunberg,' and 'Paster Micah's' endorsement.  You have absolutely lost all credibility at this point.  And as I said on that original post, there is no place for a club that endorses misogyny, bigotry, and conspiracy-driven politics in our public schools." *Id.* ¶ 173.  Ms. Eads "loved" this comment and Ms. Tuesca "liked" it. *Id.* ¶¶ 174, 175.

Another individual not involved in the litigation commented on the thread, "Parent in on the formation meeting?  Already has legal representation?  I suppose I'm a skeptic but it[']s almost like it was planned." *Id.* ¶ 176.  Defendant Alexandra Snider Pasko, an Instructional Assistant at Noblesville East Middle School, "liked" this comment. *Id.* ¶

177.  A different individual who is not a party to this litigation commented "the school was concerned that a bunch of adults were behind this group and it seems like this post is proving that point." *Id.* ¶ 178.  Defendant Allison Schwingendorf-Haley, NHS's English teacher, "liked" this comment. *Id.* ¶ 179.  A third non-party commented, "Ah, another post about the right wingers involving their children in their culture war bullshit.  Forced-birthers are revolting and this was a setup to drive conservative anger." *Id.* ¶ 181.  Ms. Tuesca "liked" this comment. *Id.* ¶ 182.

**News Media and Publicity**

On December 3, 2021, E.D.'s pastor, Micah Beckwith, posted a column in the Times of Noblesville newspaper criticizing NHS for its discriminatory practices against Noblesville Students for Life.  Mr. Beckwith's column was posted without the knowledge or consent of E.D. or her parents.  Later that same day, Principal McCaffrey wrote a rebuttal to Mr. Beckwith's column asserting that Noblesville Students for Life was not initiated by E.D. and that E.D. disregarded school policy, "insinuat[ing] that E.D. is a troublemaker and has a disregard for rules and authority." *Id.* ¶¶ 184, 186, 187.  Principal McCaffrey sent his rebuttal to every NHS student and parent using his NHS email account. *Id.* ¶ 185.

**The Instant Litigation**

Plaintiffs filed their original complaint on December 21, 2021, and their amended complaint on January 11, 2022, seeking monetary damages as well as declaratory and injunctive relief.  The Amended Complaint, which is the subject of Defendants' motion to dismiss, alleges the following federal causes of action:

- Count I – First Amendment Right of Association;

- Count II – First Amendment Right to Freedom of Speech;

- Count III – Fourteenth Amendment Right to Due Process;

- Count IV – Fourteenth Amendment Right to Equal Protection of the Law;

- Count V – Official Capacity First Amendment Right to Be Free from Retaliation;

- Count VI – Individual Capacity First Amendment Right to Be Free from Retaliation;

- Count VII – Equal Access Act

- Count XVII – Official Capacity Violations of Family Educational Rights and Privacy Act; and

- Count XVIII – Individual Capacity Violations of Family Educational Rights and Privacy Act.

The Amended Complaint also alleges the following claims under state law:

- Count VIII – Violations of School Policies Against Bullying;

- Count IX – Official Capacity Libel, Slander, and Defamation;

- Count X – Individual Capacity Libel, Slander, and Defamation;

- Count XI – Official Capacity Intimidation and Bullying;

- Count XII – Individual Capacity Intimidation and Bullying;

- Count XIII – Official Capacity Intentional Infliction of Emotional Distress;

- Count XIV – Individual Capacity Intentional Infliction of Emotional Distress;

- Count XV – Official Capacity Invasion of Privacy by Publication of Private Facts;

- Count XVI – Individual Capacity Invasion of Privacy by Publication of Private Facts; and

- Count XIX – Violation of Indiana Constitution.

On February 25, 2022, Defendants moved to dismiss all nineteen causes of action. That motion is now fully briefed and ripe for ruling.

## Legal Analysis

### I.   Applicable Legal Standard

Defendants have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  In this procedural context, the Court must accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant.  *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).  The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2).  Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II.   Discussion

#### A.  Federal Claims

##### 1.  Precedential Requirements of Enforcement of the Statutory Protections of 42 U.S.C. § 1983

Plaintiffs assert in their Amended Complaint the following federal claims brought pursuant to 42 U.S.C. § 1983: (1) First Amendment free speech; (2) First Amendment right to association; (3) First Amendment retaliation; (4) Fourteenth Amendment due process; (5) Fourteenth Amendment equal protection; and (6) Equal Access Act violations.[3]  As to all claims, except those for First Amendment retaliation and violations of the Equal Access Act, Plaintiffs have sued the municipal defendants—the Noblesville School District and NHS—and individual Defendants Niedermeyer, McCaffrey, Mobley, Swafford, and Luna in their official capacity only.  Plaintiffs' First Amendment retaliation claim is brought against the Noblesville School District, NHS, and Defendants Niedermeyer, McCaffrey, Mobley, Swafford, Luna, Pasko, Rootes, Schwingendorf-Haley, Kizer, Patterson-Jackson, Tuesca, and Eads in their official and individual capacities and the Equal Access Act claim is brought against the Noblesville School District, NHS and Defendants Niedermeyer, McCaffrey, Mobley, Swafford, and Luna in their official and individual capacities.[4]  Before addressing the merits of Defendants' motion to dismiss as to these claims, we shall provide a brief tutorial on the basic principles of § 1983 jurisprudence to counter the apparent confusion in the parties' briefing on these issues.

---

[3] The Equal Access Act is enforceable by a private right of action under § 1983 and Plaintiffs' Equal Access Act claim is therefore governed by the § 1983 standards. *See, e.g.*, *Carver Middle School Gay-Straight Alliance v. Sch. Bd. of Lake Cnty., Fla.*, 249 F. Supp. 3d 1286, 1290 (M.D. Fla. 2017) (holding that "42 U.S.C. § 1983 supplies a procedural mechanism or cause of action for litigating violations of the Equal Access Act").

[4] Plaintiffs have also brought a federal claim under the Family Educational Rights and Privacy Act ("FERPA) against various individual defendants in their official and personal capacities. Because we hold, for the reasons detailed *infra*, that no private right of action under § 1983 exists for alleged FERPA violations, we do not include that claim in our discussion here.

Section 1983 imposes liability on any "person" who, while acting under color of state law, violates an individual's federally protected rights.  In advancing such a claim, a plaintiff may sue a defendant in either his individual or official capacity.  Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), whereas official-capacity claims seek to impose liability on the governmental entity for whom the officer works, *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).

Any government official sued in his or her individual capacity is liable "only if he [or she] personally caused or participated in a constitutional deprivation."  *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (internal quotations and citation omitted).  This means a plaintiff cannot rely on a theory of respondent superior to hold a supervisor liable; instead, the plaintiff must show that the supervisor—through his or her own conduct—violated the plaintiff's rights.  *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022).  "[F]or a supervisor to be liable for the allegedly wrongful conduct of others, he [or she] must both (1) 'know about the conduct' and (2) facilitate, approve, condone, or turn a blind eye toward it."  *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022)).

Local governments and municipalities may also be held liable for constitutional violations under § 1983, but only for their own actions; they cannot be liable solely because they employed a wrongdoer.  *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc) (citing *Monell v. Dep't of Socs. Servs.*, 436 U.S. 658, 691 (1978)); *see also Milchtein*, 42 F.4th at 826 ("[A] municipal entity is not vicariously liable for the

constitutional torts of its employees.  Instead, a municipality may be liable only for conduct that is properly attributable to the municipality itself.") (internal quotations and citations omitted).  A constitutional deprivation may be attributable to a municipality only "when execution of a government's policy or custom … inflicts the injury." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (quotation marks and citation omitted).  A plaintiff can show that a constitutional violation resulted from the execution of a municipal policy or custom in the following three ways: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss."  *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)).

It is well-established law that a § 1983 claim "against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents." *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999); *accord Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (recognizing that a claim brought against an individual in their official capacity is "in all respects other than name, to be treated as a suit against the [municipal] entity … for the real party in interest is the entity") (internal citation omitted).  Thus, when a plaintiff brings a claim against a municipal entity under § 1983, to the extent the plaintiff alleges the same claim against a government official in his or her official capacity, such claim is duplicative and subject to dismissal.  *Moreno-Avalos v. City of Hammond, Ind.*, No. 2:16-cv-172, 2017 WL 57850, at *2 (N.D. Ind. Jan. 4, 2017) ("If a plaintiff brings a suit against a government entity, any claim against an

officer of that entity in his or her official capacity is redundant and should be dismissed.") (collecting cases).

Having provided this primer on the applicable background legal principles, we turn to the merits of Defendants' motion to dismiss.

### 2. Section 1983 Claims Against Defendants Niedermeyer and Swafford

Defendants argue that Plaintiffs have failed to adequately plead any of their § 1983 claims against Superintendent Niedermeyer or Assistant Principal Swafford. As noted above, Plaintiffs have brought § 1983 claims against Defendants Niedermeyer and Swafford in their official and individual capacities.

With regard to Plaintiffs' official capacity claims against Defendants Niedermeyer and Swafford, because Defendants Noblesville School District and NHS (the municipal entities) are also named as defendants in each of those claims, naming Defendants Niedermeyer and Swafford in their official capacity is duplicative. *See Sizelove v. Madison-Grant United Sch. Corp.*, ___ F. Supp.3d ___, 2022 WL 1045022, at *22 (S.D. Ind. Apr. 7, 2022) (dismissing official capacity claim against school administrator sued in his official capacity "as duplicative of the claim against the School Corporation") (citations omitted). Accordingly, Defendants' motion to dismiss Plaintiffs' § 1983 claims brought against Superintendent Niedermeyer and Assistant Principal Swafford in their official capacity is <u>granted</u>.

Although Defendants have not specifically moved to dismiss any other individual defendant sued under § 1983 in his or her official capacity, those claims are likewise redundant. Accordingly, Plaintiffs are hereby <u>ORDERED TO SHOW CAUSE</u> within 30

16

days of the date of this Order why the § 1983 claims alleged against Defendants McCaffrey, Mobley, Luna, Pasko, Rootes, Schwingendorf-Haley, Kizer, Patterson-Jackson, Tuesca, and Eads in their official capacity should not dismissed on these same grounds.

Defendant Swafford is also entitled to dismissal of the § 1983 brought against him in his individual capacity.  As discussed above, for "a defendant to be liable under section 1983, []he must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."  *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).  "Consequently, a claim will not survive a motion to dismiss unless it 'plead[s] that [a] Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Milchtein*, 42 F.4th at 824 (quoting *Iqbal*, 556 U.S. at 676).  "Thus, a supervisory … official may only be personally liable under § 1983 'if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent."  *Riley El v. Pritzker*, No. 19 C 02002, 2022 WL 4329030, at *2 (N.D. Ill. Sept. 19, 2022) (quoting *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019)).  This means the official must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye …."  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quotation marks and citation omitted).

Here, the only substantive factual allegations in the Amended Complaint against Defendant Swafford in the entirety of Plaintiffs' 566-paragraph Amended Complaint are that E.D. emailed him on one occasion to seek clarification on her club flyer and did not receive a response, (Am. Compl. ¶ 271), and that he "knew or should have known that the

17

revocation of [Noblesville Students for Life] was discrimination based on viewpoint," yet "failed to reinstate [Noblesville Students for Life] as an approved club or take any other corrective action."  Am. Compl. ¶ 66.  Plaintiffs have pled no facts sufficient to raise the inference that Assistant Principal Swafford had any personal involvement in the decisions to deny approval for the Noblesville Students for Life's flyer and/or to revoke the club or even that he knew that those decisions had been made.  The mere fact that he failed to respond to an email inquiry regarding her flyer prior to it being denied approval and the club revoked is not sufficient to support an inference that he is liable on any federal claim alleged in the Amended Complaint.

Plaintiffs have, however, sufficiently alleged Superintendent Niedermeyer's personal involvement, albeit barely.  The only § 1983 claim alleged against Defendant Niedermeyer in her individual capacity is a First Amendment retaliation claim in which Plaintiffs allege, *inter alia*, that "[b]y revoking E.D.'s student organization status because she exercised her First Amendment right by starting a pro-life club at NHS, Defendants have retaliated against E.D. and [Noblesville Students for Life] because of their free expression and deprived them of their ability to express their ideas freely."  Am. Compl. ¶ 330.  With regard to Defendant Niedermeyer's personal involvement, the Amended Complaint alleges that "Niedermeyer was made aware of the [r]evocation [of Noblesville Students for Life] and took no action to correct it."  Am. Compl. ¶ 141.  Accepting this fact as true, as we are required to do at this stage of the litigation, a reasonable inference arises from that allegation that Superintendent Niedermeyer "knew" about the challenged conduct and, through her inaction, either "condone[d]" or "turn[ed] a blind eye" to it.  *See*

18

*Gentry*, 65 F.3d at 561.  Barebones as that claim is, we will nonetheless not dismiss at this early stage of the litigation the First Amendment retaliation claim alleged against Superintendent Niedermeyer in her individual capacity based on a lack of personal involvement.

### 3.  First Amendment Freedom of Speech

Plaintiffs also allege that, pursuant to an "unwritten verbal policy" governing the registration of student organizations and clubs, Defendants prohibited E.D. from advertising her club and ultimately revoked the club's status based on its pro-life viewpoint, in violation of their First Amendment free speech rights.  Defendants contend that Plaintiffs' First Amendment free speech claim must be dismissed because "[t]he allegations in the Amended Complaint show that only permissible content limitations were applied here, not viewpoint discrimination" and that "the School was not motivated to revoke the club's status because of the pro-life viewpoint of the group."  Dkt. 61 at 23.  However, Defendants' conclusion to this effect reflects their distillation of all inferences from the facts alleged in the Amended Complaint in *their* favor, rather than in Plaintiffs' favor, which is the opposite of what the Rule 12(b)(6) standard requires.  *See United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 44 F.4th 646, 662 (7th Cir. 2022) ("[A] ruling on a motion to dismiss … draws all reasonable inferences in the pleader's favor.").

No dispute exists between the parties over the legal principle that, once the government creates a "limited forum" for speech, as the School did here, it "may not exclude speech where its distinction is not reasonable in light of the purpose served by the forum, nor may it discriminate against speech on the basis of its viewpoint."

19

*Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995) (quotation marks and internal citations omitted).  Based on the allegations in the Amended Complaint, which are taken as true, and drawing all inferences in Plaintiffs' favor as we are required to do at this stage of the litigation, we hold that Plaintiffs have pled sufficient facts to support an inference that Defendants, applying an "unwritten verbal policy" of the School, prevented E.D. from advertising her club and ultimately revoked her right to form that club based on its pro-life viewpoint.

The Amended Complaint alleges that Noblesville Students for Life was originally approved as a student club at NHS, but that status was revoked after E.D. sought approval for a flyer advertising the club that included a photograph depicting students holding signs, one of which displayed the message "Defund Planned Parenthood."  Am. Compl. ¶ 112.  Plaintiffs allege that E.D. was first told only that her club's flyer could not be approved because it included a photograph, but after E.D. pointed out that other clubs were allowed to post flyers with photographs, she and her mother were told that the School was "already walking on eggshells" and that the photograph on her flyer was problematic because of the "Defund Planned Parenthood" sign.  *Id.* ¶¶ 277, 278.  Plaintiffs further allege that other NHS clubs were permitted to include on their flyers and other materials political content expressing messages with which the School agreed, yet her club was revoked within three hours of NHS administrators viewing her flyer that displayed a message with which the School disagreed, as evidenced by the social media activity of the School District's employees.  *Id.* ¶ 130.

20

Defendants cite other facts in Plaintiffs' complaint that suggest a viewpoint neutral reason for these decisions and argue that the exhibits attached to the Amended Complaint show that the photographs and images on other clubs' materials that Plaintiffs reference were not in fact political as Plaintiffs allege.  However, analyzing and weighing the evidence and determining which is the *more* reasonable inference to be drawn from the facts alleged is beyond our purview on a motion to dismiss.  To survive dismissal, Plaintiffs need only provide "*some* specific facts to support the legal claims asserted in the complaint." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (internal quotation marks omitted) (emphasis added).  This is not a high bar and the facts alleged in the Amended Complaint are sufficient to satisfy the Rule 12(b)(6) standard.  Whether Plaintiffs can ultimately prove these allegations on summary judgment or at trial is not the question before us today.  Defendants' motion to dismiss Plaintiffs' First Amendment free speech claim is therefore denied.[5]

### 4. First Amendment Freedom of Association

Defendants argue that Plaintiffs' First Amendment right of association claim must be dismissed because it turns on whether Plaintiffs were engaging in activities protected by the First Amendment, and the allegations in the Amended Complaint show that the

---

[5] The parties are reminded, however, that Plaintiffs have alleged this claim (as well as the rest of their § 1983 claims, other than their individual capacity claim for First Amendment retaliation) against only the municipal entities and the individual defendants in their official capacity. Accordingly, these claims have been alleged as *Monell* claims and are governed by the standards set forth in that case and its progeny.  Defendants have not (yet) sought dismissal of any of Plaintiffs' § 1983 claims on grounds that the Amended Complaint fails to adequately plead that a practice, policy, or custom of NHS and the Noblesville School District—as opposed to the actions of individual school employees—caused their constitutional injuries, so we do not address that issue in this Order.

conduct that led to the revocation of E.D.'s club was not so protected.  *See Montgomery v. Stefaniak*, 410 F.3d 933, 937 (2005) (recognizing that that First Amendment protects the "freedom of expressive association," which "ensures the right to associate for the purpose of engaging in activities protected by the First Amendment") (citations omitted). However, for the reasons just explicated in addressing Plaintiffs' free speech claim, whether Plaintiffs were engaging in activity protected by the First Amendment is a matter in dispute.  Because we have found that Plaintiffs have alleged sufficient facts to support an inference that the revocation implicated Plaintiffs' First Amendment rights, we cannot at this time dismiss Plaintiffs' free association claim on the grounds advanced by Defendants.[6]

### 5.  First Amendment Retaliation

Defendants argue that Plaintiffs' First Amendment retaliation claims "fail as a matter of law because the allegations in the Amended Complaint show Plaintiffs did not engage in activity protected by the First Amendment, and the revocation of the club's status was not based on any protected First Amendment activity."  Dkt. 61 at 32. Because, for the same reasons detailed above, we have found that Plaintiffs' First Amendment free speech and freedom of association claims survive Defendants' motion to

---

[6] In their opening brief, Defendants argued that Plaintiffs failed to adequately allege a First Amendment right to association claim because they have not alleged that Defendants entirely prevented E.D. from associating with the other students who expressed interest in her club, just that she was prevented from doing so as a recognized student group.  However, as Plaintiffs point out in their response, this contention is not well taken as it is well-established that "denial of official recognition, without justification, to [student] organizations burdens or abridges that associational right [implicit in the freedoms of speech, assembly and petition]."  *Healy v. James*, 408 U.S. 169, 181 (1972).  Apparently recognizing the futility of their position, Defendants have abandoned this argument by failing to respond to it in their reply.

dismiss, and Defendants have put forth no other basis on which Plaintiffs' claims for First Amendment retaliation should be dismissed, Defendants' motion is denied as to these claims.

### 6. Fourteenth Amendment Due Process

Plaintiffs allege that Defendants' decision to revoke Noblesville Students for Life's student club status based on "vague standards that allow for content and viewpoint discrimination," violated her Fourteenth Amendment due process rights.  Am. Compl. ¶ 292.  Defendants seek dismissal of this claim on grounds that Plaintiffs have failed to identify a protected property or liberty interest of which they were deprived, given that students have no constitutionally protectible "right to a student club."  While we agree that there may be no protectible interest in having a student club in general, that is not the precise interest Plaintiffs claim to have asserted here.  Rather, liberally construed, Plaintiffs' claim is that they have a liberty interest in exercising their First Amendment rights through the formation of a student club and associating therein and that Defendants deprived them of this right without due process of law by applying an unconstitutionally vague policy in revoking Noblesville Students for Life's status as a student club.

We understand Plaintiffs to be asserting only a procedural due process claim in the Amended Complaint.[7]  "The two elements of a procedural due process claim are: '(1)

_____

[7] To the extent Plaintiffs are asserting a substantive due process claim based on deprivation of their First Amendment rights, any such claim is dismissed as duplicative of their First Amendment claims.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due

deprivation of a protected liberty or property interest and (2) insufficient procedural protections surrounding that deprivation.'" *Tucker v. City of Chi.*, 907 F.3d 487, 491 (7th Cir. 2018) (quoting *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). Our court has recognized that "[t]he First Amendment, containing fundamental rights, is one source of cognizable liberty interests in support of a procedural due process claim." *Clemons v. Trustees of Ind. Univ.*, No. 1:19-cv-04668-JRS-DML, 2021 WL 1178539, at *4 (S.D. Ind. Mar. 29, 2021). Other courts both within and outside the Seventh Circuit have held similarly. *See Davison v. Loudoun Cnty. Bd. of Supervisors*, 1:16cv932(JCC/IDD), 2016 WL 4801617, at *7 (E.D. Va. Sept. 14, 2016) (holding that the Due Process clause "embrace[s]" a right to notice and an opportunity to be heard before free speech rights are violated); *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668 (JFB)(ARL), 2016 WL 767986, at *11 (E.D.N.Y. Feb. 26, 2016) ("[T]o the extent that plaintiff alleges that the defendant denied him … due process by depriving him of his First Amendment rights without sufficient process … such a claim can survive the defendant's motion to dismiss."); *Rubin v. Ikenberry*, 933 F. Supp. 1425, 1437 (C.D. Ill. 1996) ("liberty interests [in First Amendment free speech] require a fair adversary hearing").

Based on this precedent, we are unable to say as a matter of law that Plaintiffs' have failed to identify a liberty interest protectible under the Due Process Clause. As this is the only ground Defendants have put forth in support of their motion to dismiss

_____

process,' must be the guide for analyzing these claims.") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Plaintiffs' Fourteenth Amendment procedural due process claim, we deny Defendants' motion with respect to this claim.

### 7.   Fourteenth Amendment Equal Protection

Defendants argue that Plaintiffs' Fourteenth Amendment equal protection claim must be dismissed because: (1) the Amended Complaint fails to allege facts sufficient to show a similarly situated club was treated more favorably; and (2) the facts alleged show that Defendants had a rational basis for treating E.D.'s club differently than other student groups.  Plaintiffs argue they have adequately stated a claim for a violation of their equal protection rights by alleging that Defendants' student club policy was applied in a manner that "allow[ed] other student organizations to receive approved status," (Am. Compl. ¶ 312), including those "that advocate for liberal political viewpoints," (*id.* ¶ 306), while denying the same to Plaintiffs and permitted other student groups to include photographs and political messages on their flyers and in other displays while Noblesville Students for Life was prohibited from doing so.  The Amended Complaint alleges that, in engaging in this conduct, Defendants' policy "discriminate[d] intentionally against Plaintiff's [sic] right to Freedom of Association, Freedom of Speech, and due process of law."  Am. Compl. ¶ 309.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. CONST. amend. XIV).  "To be considered 'similarly situated,' a plaintiff and his

comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). Although this analysis "is not a precise formula[,] … similarly situated individuals must be very similar indeed." *Id.* (quotation marks and citation omitted). The question of whether a comparator is similarly situated is usually a question to be determined by the factfinder, dismissal at the pleading stage is appropriate if the plaintiff "fail[s] to allege facts tending to show that it was similarly situated to any of the comparators." *See id.*

Defendants argue that Plaintiffs cannot show that E.D.'s club is similarly situated to other approved student groups because they have "identified no other club that was allowed to have non-students participating in the promotion of the club by attending meetings." Dkt. 61 at 28. At the motion to dismiss stage of this litigation, however, "plaintiffs are not required to set forth specific facts identifying all the factual traits, circumstantial nuances, and peculiarities, between [their comparators] to overcome any doubt that the [comparators] are not 'similarly situated.'" *Hegwood v. City of Eau Claire*, 668 F. Supp. 2d 1156, 1163 (W.D. Wis. 2009) (quotation marks and citation omitted). Rather, at the pleading stage, Plaintiffs' allegation that Noblesville Students for Life was a student-run group that engaged in similar conduct as other approved student clubs at NHS in using photographs and political content in its flyers is sufficient this early in the litigation to allow an inference to be drawn that the groups are similarly situated in the aspects that are material to the facts of this case.

26

Defendants next argue that Plaintiffs' equal protection claim must be dismissed because "the Amended Complaint shows a rational relationship [between the different treatment and] the school's legitimate interests." Dkt. 61 at 28. Specifically, Defendants argue that, based on the fact that E.D.'s mother attended one of the meetings at which the club was discussed, they had a rational basis for treating E.D.'s club differently, namely, that Defendants believed that "this club—unlike other clubs—appeared not to be student driven" and revoked it on that basis. *Id.* at 29. Plaintiffs have not responded to this argument.

Although the allegations in the Amended Complaint are by no means a model of clarity,[8] Plaintiffs do allege that the differential treatment at issue interfered with their fundamental First Amendment and due process rights. It is well-established that "[h]eightened scrutiny … is appropriate when government action interferes with a person's fundamental rights, such as freedom of speech…." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). Accordingly, to the extent Plaintiffs are ultimately able to prove that Defendants' conduct impacted a fundamental right, a higher level of scrutiny than rational basis will apply. Because we have found, for the reasons

---

[8] The Amended Complaint alleges in one paragraph, for example, that Defendants "lack a rational compelling state interest for their disparate treatment" and elsewhere alleges that Defendants' application of the student club policy in this case is "not narrowly tailored to Plaintiff[s] because Plaintiff[s'] speech does not implicate any legitimate interest of Defendants." These allegations inaccurately combine buzzwords from the differing levels of scrutiny applicable in the equal protection context. Strict scrutiny requires a government action to "further a compelling interest" and be "narrowly tailored to achieve that interest," *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139, 152 (7th Cir. 2011), while rational basis review requires only that a government classification "bear[] a rational relation to some legitimate end." *Eby-Brown Co., LLC v. Wis. Dep't of Agriculture*, 295 F.3d 749, 754 (7th Cir. 2002).

detailed above, that Plaintiffs have alleged plausible First Amendment claims, we cannot yet determine as a matter of law what level of scrutiny applies to Plaintiffs' equal protection claim. Defendants' motion to dismiss this claim is therefore denied.

### 8. Equal Access Act

Plaintiffs have alleged against Defendants Niedermeyer, Swafford, McCaffrey, Mobley, and Luna in their official and individual capacities claims for violation of the Equal Access Act, under which it is "unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political philosophical, or other content of the speech at such meetings." 20 U.S.C. § 4071(a). Defendants seek dismissal of Plaintiffs' Equal Access Act claims on grounds that "the Amended Complaint shows that the revocation of club status was not based on religious, political, or philosophical content of the meetings …." Dkt. 61 at 29.

For the same reasons explicated above with regard to Plaintiffs' First Amendment free speech claim, Defendants' motion to dismiss Plaintiffs' Equal Access Act claims must be denied as Defendants' argument in support of dismissal requires us to view the facts and make all inferences in their favor, in contravention of the motion to dismiss standard. When the correct standard is applied, and all reasonable inferences are made in Plaintiffs' favor, they have alleged sufficient facts to state a plausible claim that revocation of the club's status was based on a prohibited reason. Accordingly, Plaintiffs'

Equal Access Act claims survive dismissal, except as to Defendant Niedermeyer in her official capacity and Defendant Swafford in his official and individual capacities.

### 9. Family Educational Rights and Privacy Act

Plaintiffs allege that Principal McCaffrey's rebuttal email communication in response to a local newspaper article revealed "identifying information [about] E.D., such as that she is a NHS student and that she started a pro-life club that was denied," in violation of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g). Defendants seek dismissal of Plaintiffs' FERPA claims on grounds that there is no private cause of action under the statute.

"Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 278 (2002). "The Act directs the Secretary of Education to withhold federal funds from any public or private 'educational agency or institution' that fails to comply with" the conditions of FERPA. *Id.* at 279. The Supreme Court has recognized that "FERPA's nondisclosure provisions contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions. They therefore create no rights enforceable under [42 U.S.C. §] 1983." *Id.* at 290. Our court has likewise explicitly held that FERPA does not provide a private right of action under § 1983. *Norris by Norris v. Bd. of Educ. of Greenwood Cmty. Sch. Corp.*, 797 F. Supp. 1452, 1465 (S.D. Ind. 1992) ("The FERPA provides expressly that the Secretary of Education is responsible for enforcing the provisions and

protections of FERPA; Section 1983 does not create a private right of action for damages where the federal statute provides an exclusive administrative enforcement mechanism.") (collecting cases).

Plaintiffs concede that there is no federal private right of action under FERPA but cursorily argue that the language of Indiana's Access to Public Records Act, Ind. Code. § 5-14-3-4(a)(3), which provides that documents required to be kept confidential by federal law may not be disclosed, provides them "a foothold to enforce FERPA." Dkt. 72-3 at 34. However, Plaintiffs cite no legal support for this position nor does our review of the case law provide any. Accordingly, Plaintiffs' FERPA claims must be dismissed as no private right of action exists.

## B. State Law Claims

### 1. Tort Claims

Defendants argue that Plaintiffs' state law tort claims[9] must be dismissed under the Indiana Tort Claims Act (ITCA) because Plaintiffs failed to timely submit a tort claim

---

[9] Defendants do not specify which of Plaintiffs' state law claims are tort claims subject to dismissal under the ITCA, but Plaintiffs concede that the following claims are governed by the statute: Count IX—Official Capacity Libel, Slander, and Defamation; Count X—Individual Capacity Libel, Slander, and Defamation; Count XI—Official Capacity Intimidation and Bullying; Count XII—Individual Capacity Intimidation and Bullying; Count XIII—Official Capacity Intentional Infliction of Emotional Distress; Count XIV—Individual Capacity Intentional Infliction of Emotional Distress; Count XV—Official Capacity Invasion of Privacy by Publication of Private Facts; and Count XVI—Individual Capacity Invasion of Privacy by Publication of Private Facts. Additionally, we find that Count VIII—Violations of School Policies Against Bullying should also be categorized as a tort claim as it alleges a "civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages." *United States v. Burke*, 504 U.S. 229, 234–35 (1992) (defining "tort"). Because Count IX "seek[s] relief in the form of damages in compensation for civil wrongs," we treat it as a tort. *Ball v. City of Indianapolis*, 760 F.3d 636, 644 (7th Cir. 2014). Accordingly, when we

notice as required by the ITCA and also failed to allege that any Defendant sued in their

individual capacity was acting outside the scope of their employment as required to be

personally liable under the ITCA.  We understand Plaintiffs to concede that that they did

not send formal notice of their tort claims against Defendants.  Plaintiffs do contend,

however, that they should be allowed to proceed with their state law tort claims because

they substantially complied with the notice requirements of the ITCA with regard to their

official capacity claims and alleged adequate facts supporting the conclusion that the

defendants sued in their individual capacity were acting outside the scope of their

employment when they engaged in the acts or omissions that injured Plaintiffs.

### a.      Individual Capacity Claims

"The ITCA governs lawsuits brought against political subdivisions and their

employees, and it provides substantial immunity for conduct within the scope of the

employees' employment."  *Merideth v. Hermann*, No. 3:20-cv-00025-RLY-MPB, 2021

WL 5404499, at *3 (S.D. Ind. Mar. 25, 2021) (citing *Chang v. Purdue Univ.*, 985 N.E.2d

35, 51 (Ind. Ct. App. 2013)).  "A lawsuit alleging that an employee acted within the scope

of the employee's employment bars an action by the claimant against the employee

personally."  IND. CODE § 34-13-3-5(b).  This means that a plaintiff cannot sue a

government employee "personally if the complaint, on its face, alleges that the

employee's acts leading to the claim occurred within the scope of employment."  *Bushong

v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003); *accord Ball v. Indianapolis*, 760 F.3d

---

reference in this Order Plaintiffs' "state law tort claims" or "tort claims," these are the claims
included.

3eb077ec8a7e9d91

636, 645 (7th Cir. 2014) ("Under the [ITCA], there is no remedy against the individual

employee so long as he was acting within the scope of his employment.") (citing IND.

CODE § 34-13-3-5(b)).

Conduct within the "scope of employment" is conduct "of the same general nature

as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc.*

*v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000). "Even tortious, malicious, or criminal acts

may fall within the scope of employment." *Montanez v. Town of Highland*, No. 2:19-

CV-208-TLS, 2020 WL 6728961, at *5 (N.D. Ind. Nov. 13, 2020) (citations omitted).

Generally, "whether an employee's actions were within the scope of employment is a

question of fact to be determined by the factfinder." *Burton v. Benner*, 140 N.E.3d 848,

852 (Ind. 2020) (internal quotation omitted). However, "when the facts are undisputed,

the Court may decide as a matter of law whether the acts were in the scope of

employment." *Huspon v. Foster*, No. 1:20-cv-01230-SEB-DML, 2022 WL 823698, at *4

(S.D. Ind. Mar. 16, 2022) (citations omitted).

Here, Plaintiffs allege tort claims of bullying, intimidation, defamation, intentional

infliction of emotional distress, and invasion of privacy against various school employees

in their individual capacity. Plaintiff's individual capacity defamation and invasion of

privacy claims are based on social media postings or "likes" made by various teachers

and administrators on the Noblesville Schools Community and/or the Noblesville

Uncensored Facebook pages. With regard to social media activity, the Amended

Complaint specifically alleges that, pursuant to school policy, "when the teachers posted

to social media they were acting *within the scope of their employment*." Am. Compl. ¶

562.  Given Plaintiffs' affirmative allegation that Defendants' social media activity occurred within the scope of their employment, Plaintiffs are barred from suing Defendants personally for any tort claim based on their social media activity.

Another part of Plaintiffs' individual capacity invasion of privacy claim is based on information Principal McCaffrey revealed in an email sent from his NHS email account to all NHS parents and students in which he was responding to an editorial written by E.D.'s pastor criticizing the School for its discriminatory practices against E.D.'s school club.  Superintendent Niedermeyer is also sued personally for invasion of privacy based on her failure to reprimand Principal McCaffrey for his email response.  Communicating with parents and students regarding allegations against the School is clearly an act within the scope of a public school administrator's employment, as is deciding whether to discipline a subordinate for work-related conduct.  Accordingly, Plaintiffs may not bring any individual capacity tort claim against Principal McCaffrey or Superintendent Niedermeyer for these alleged acts and omissions.

Plaintiffs' remaining individual capacity tort claims for intimidation, bullying, and intentional infliction of emotional distress are based on allegations relating to Dean Luna's conduct when he removed E.D. from class on September 14, 2021 and required her to meet with him to discuss her having allegedly violated a school policy against taking photographs in school; Assistant Principal Mobley's failure to intervene when Dean Luna acted in an allegedly intimidating fashion during that meeting; and Superintendent Niedermeyer's and Principal McCaffrey's failure to reprimand Dean Luna and Assistant Principal Mobley for their conduct.  These actions, to wit, school

employees meeting with a student to address a possible disciplinary issue and administrators determining whether to discipline subordinates for the manner in which they dealt with that student's disciplinary issue, fall squarely within the authorized duties of school employees in their positions.

In sum, taking Plaintiffs' allegations as true, as we are required to do at this stage of the litigation, the Defendants sued personally were all acting within the scope of their employment when they committed the acts or omissions upon which Plaintiffs' tort claims are based. Plaintiffs' individual capacity tort claims must therefore be dismissed.

### b.    Official Capacity Claims

We turn next to address Defendants' argument that Plaintiffs' official capacity tort claims must be dismissed for failure to provide notice under the ITCA. The ITCA provides that a claim against a public school or its employees is barred unless notice of the claim is submitted to the governing body of that political subdivision within one hundred and eighty (180) days after the alleged loss occurs. *See* IND. CODE § 34-13-3-8; *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999) ("The notice requirements of the ITCA apply not only to suits against political subdivisions but also to suits against employees of political subdivisions."). "Indiana courts have consistently held that the failure to comply with the ITCA's notice requirements requires dismissal." *Weaver v. Elkhart Cmty. Sch. Corp.*, 95 N.E.3d 97, 101 (Ind. Ct. App. 2018) (citing *Orem v. Ivy Tech State Coll.*, 711 N.E.2d 864, 870 (Ind. Ct. App. 1999)).

Failure to provide notice under the ITCA is an affirmative defense, which a plaintiff is not required to anticipate or plead around in a complaint. *See Brown v.*

*Alexander*, 876 N.E.2d 376, 383–84 (Ind. Ct. App. 2007) ("[W]hen a plaintiff fails to give the required notice [under the ITCA], the defendant has an affirmative defense of noncompliance, which must be raised in a responsive pleading to the plaintiff's complaint."); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) ("[C]omplaints do not have to anticipate affirmative defenses to survive a motion to dismiss.").  However, now that Defendants have raised the issue, the burden shifts to Plaintiffs to demonstrate that they have complied or that their noncompliance is excusable.

Although the Amended Complaint is silent as to whether notice was provided under the ITCA, Plaintiffs have attached as an exhibit to their response brief a demand letter dated November 12, 2021, that they sent to Noblesville High School Principal Craig McCaffrey and Defendants' counsel.  Plaintiffs argue that the letter establishes their substantial compliance with the ITCA's notice provision, thereby apparently conceding that they did not provide formal notice under the ITCA.  Because Plaintiffs attached an exhibit to their response, the Court may either exclude the document or convert the motion to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  Notice is usually required before converting a motion to dismiss to one for summary judgment, but here, each party has had "a reasonable opportunity to present all the material that is pertinent to the motion" and to respond to the other's evidence and argument.  *See id.*  Under these circumstances, we *sua sponte* convert Defendant's motion to dismiss to one for summary judgment as to the issue of ITCA notice compliance.

Summary judgment is appropriate where there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

The notice required under the ITCA must be filed with "the governing body of that political subdivision," Ind. Code § 34-13-3-8, and "must describe in a short and plain statement the facts on which the claim is based," including:

> the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

Ind. Code § 34-13-3-10.  Although what constitutes substantial compliance with the notice requirement is "not a question of fact but one of law," it nonetheless "is a fact-sensitive determination."  *Chariton v. City of Hammond*, 146 N.E.3d 927, 934 (Ind. Ct. App. 2020) (quoting *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013)).

"Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied."  *Id.*  "The purposes of the notice statute include informing the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that [the] political [sub]division may investigate, determine its possible liability, and prepare a defense to

36

the claim." *Town v. Cicero v. Sethi*, 189 N.E.3d 194, 210 (Ind. Ct. App. 2022) (quoting *Schoettmer*, 992 N.E.2d at 707. In assessing substantial compliance, "[t]he crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Id.* (quoting *Schoettmer*, 992 N.E.2d at 707) (emphasis removed).

Having carefully reviewed the November 21, 2021 demand letter submitted by Plaintiffs, we hold that it does not substantially comply with the ITCA notice requirement. Even assuming that Principal McCaffrey can be considered the "governing body" of Noblesville High School, the letter's content does not satisfy the purpose of the ITCA's notice provision. Plaintiffs rely on the demand letter as the basis for asserting state law claims of bullying, intimidation, defamation, intentional infliction of emotional distress, and invasion of privacy, but the letter makes *no* reference to Plaintiffs' intent to file any of these legal claims nor does it name *any* individual alleged to have been involved or describe *any* circumstances or conduct that remotely relate to the tort claims alleged in this lawsuit.

Without information regarding the "full nature" of these tort claims, Defendants could not have assessed their liability or prepared a defense to those claims. *See Sethi*, 189 N.E.3d at 210 ("Having not been informed of the full nature of [the plaintiff's] fraud and constructive fraud claims ultimately asserted in their second amended complaint, the [defendant] could not have assessed its liability or prepared a defense to those claims."). Accordingly, Plaintiffs' purported substantial compliance with the ITCA notice

requirement is insufficient as a matter of law and Plaintiffs' official capacity tort claims must therefore be dismissed.

## 2.  Violations of the Indiana Constitution[10]

Having dismissed Plaintiffs' tort claims under the ITCA, Plaintiffs' only remaining state law claim is one brought under the Indiana Constitution.  Specifically, Plaintiffs allege that the revocation of Noblesville Students for Life's club status restricted E.D.'s expressive activity and denied her freedom of speech under Article 1 Section 9 of the Indiana Constitution, which provides that "[n]o law shall be passed, restraining the free interchange of though and opinion, or restricting the right to speak, write or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."  Defendants seek dismissal of this claim on grounds that there is no private right of action for violations of the Indiana Constitution.

Plaintiffs concede, and we agree, that there is no private right of action for monetary damages under Article 1, Section 9 of the Indiana Constitution for an alleged

---

[10] In their opening brief, Defendants argued that all Plaintiffs' state law claims were barred because of Plaintiffs' failure to provide notice under the ITCA, or, alternatively, under Indiana's Claims Against Public Schools Act ("CAPSA"), Ind. Code § 34-13-3.5-4, which provides that claimants may not initiate a civil action or administrative proceeding against a public school "unless the individual or entity submits written notice to the public school and the governing body … that notifies the public school and the governing body … of the alleged violation of law and indicates a proposed remedy."  Ind. Code § 34-13-3.5-4.  However, the statute elsewhere provides: "This chapter must not be construed to restrict or limit the rights, procedures, or remedies available to an individual or entity under (1) the federal or state Constitution; or (2) another federal law."  Ind. Code § 34-13-3.5-2.  Accordingly, Plaintiffs' claim under the Indiana Constitution "is expressly exempted from notice requirements by Ind. Code § 34-13-3.5-2," *Edge v. Bd. of Sch. Trustees of Salem Cmty. Sch. Corp.*, 4:18-cv-00167-TWP-DML, 2019 WL 2744691, at *4 (S.D. Ind. July 1, 2019); thus, failure to provide notice under CAPSA is not grounds for dismissal of this claim.

freedom of speech violation.  *Taylor v. City of Lawrenceburg*, No. 4:14-cv-00077-RLY-TAB, 2017 WL 2618948, at *6 (S.D. Ind. June 16, 2017) (citing *Cantrell v. Morris*, 849 N.E.2d 488, 492 (Ind. 2006)).  Accordingly, Plaintiffs' claim for monetary damages under the Indiana Constitution must be dismissed.

Plaintiffs argue, however, that there exists a private right of action for Article 1, Section 9 violations where the remedy sought is declaratory or injunctive relief. Although Plaintiffs' request for a preliminary injunction is no longer pending in this case, the Amended Complaint does seek "an injunction against NHS'[s] revocation of the student organization [Noblesville Students for Life]"[11] and "a declaration that the Defendants violated Indiana Constitutional Article 1, Section 9 Freedom of Speech protections."  Am. Compl. at 63.  Defendants have not specifically responded to Plaintiffs' argument with regard to their request for permanent injunctive and declaratory relief under the Indiana Constitution; accordingly, Plaintiffs' claim for injunctive and declaratory relief survives Defendants' motion to dismiss.

## III.   Conclusion

For the reasons detailed above, the Court rules as follows:

(1) Defendant's Motion to Dismiss [Dkt. 60] is <u>GRANTED IN PART</u> as to the

following claims and Defendants:

---

[11] It is possible that Plaintiffs' request for permanent injunctive relief may now be moot based on events that have transpired since the filing of Defendants' motion to dismiss, but that is not clear on the record currently before us.

- o <u>Counts I–V only as to Defendants Niedermeyer and Swafford</u> (official capacity First Amendment free speech, free association, and retaliation claims and Fourteenth Amendment due process and equal protection claims);

- o <u>Count VI only as to Defendant Swafford</u> (individual capacity First Amendment retaliation claim);

- o <u>Count VII only as to Defendant Niedermeyer in her official capacity and Defendant Swafford in his official and individual capacities</u> (Equal Access Act claim)

- o <u>Counts XVII and XVIII</u> (individual and official capacity FERPA claims); and

- o <u>Counts X, XII, XIV, and XVI</u> (individual capacity Defamation, Intimidation and Bullying, Intentional Infliction of Emotional Distress, and Invasion of Privacy by Publication of Private Facts state law claims).

(2) Defendants Motion to Dismiss is <u>DENIED IN PART</u> as to the following claims:

- • <u>Counts I–V as to all Defendants other than Niedermeyer and Swafford</u> (official capacity First and Fourteenth Amendment claims);

- • <u>Counts VI as to all Defendants other than Defendant Swafford</u> (individual capacity First Amendment retaliation claim);

- • <u>Count VII as to all Defendants other than Defendant Niedermeyer in her official capacity and Defendant Swafford in his official and individual capacities</u> (Equal Access Act claim); and

- <u>Count XIX only as to injunctive and declaratory relief</u> (Indiana Constitution).

(3) Defendants' Motion to Dismiss is *sua sponte* converted to a summary judgment motion with regard to the issue of ITCA notice, and summary judgment is <u>GRANTED</u> in Defendants' favor on the following claims for failure to comply with the ITCA's notice requirement:

o <u>Counts VIII, IX, XI, XIII, and XV</u> (official capacity Violation of School Policies Against Bullying, Defamation, Intimidation and Bullying, Intentional Infliction of Emotional Distress, and Invasion of Privacy by Publication of Private Facts state law claims).

(4) Plaintiffs are hereby <u>ORDERED TO SHOW CAUSE</u> within 30 days from the date of this order as to why their remaining official capacity § 1983 claims against <u>Defendants McCaffrey, Mobley, Luna, Pasko, Rootes, Schwingendorf-Haley, Kizer, Patterson-Jackson, Tuesca, and Eads</u> should not be dismissed as duplicative of their claims against the municipal entities.

IT IS SO ORDERED.

Date: _____9/30/2022_____          _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

41

Distribution:

Indiana Family Institute
136 S 9th St, Ste 324
Noblesville, IN 46060

Students for Life of America
1000 Winchester St, Ste 301
Fredericksburg, VA 22401

Laura Kathleen Buckner
Charitable Allies
kbuckner@charitableallies.org

Zachary S. Kester
Charitable Allies, Inc.
zkester@charitableallies.org

Spencer Eastman Rehn
Charitable Allies
srehn@charitableallies.org

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Zechariah David Yoder
ADLER ATTORNEYS
zech@noblesvilleattorney.com